ROSE J. ZYBACH, APPELLEE, V. STATE OF NEBRASKA, DEPARTMENT OF SOCIAL SERVICES, APPELLANT.

411 N.W.2d 627

Filed September 4, 1987. No. 86-358.

Robert M. Spire, Attorney General, and Royce N. Harper, for appellant.

Joseph S. Ramirez of Legal Aid Society, for appellee.

BOSLAUGH, C.J., Pro Tem., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

The State of Nebraska, Department of Social Services (hereinafter Department), appeals the decision of the Platte County District Court reversing the finding and order of the director of the Department. The director's order had denied the

appellee, Rose J. Zybach, assistance to the aged, blind, and disabled, and medical assistance (AABD/MA).

The underlying procedural facts show that on June 5, 1985, Walter C. Zybach, the son of appellee, filed an "Application for Assistance" on behalf of appellee with the Department's Columbus, Nebraska, local office. The application sought AABD/MA benefits for appellee. The application was completed with the aid of department employees, was signed by Walter "for Rose Zybach," and showed that appellee was born on July 29, 1891, and had lived in a nursing home in Columbus since October 9, 1973. The application also set out that appellee had $3,359.01 in a checking account, a $5,000 certificate of deposit as a burial fund, and a burial space.

The Department's Columbus office investigated the situation and on August 5, 1985, issued its "Notice of Finding," determining that appellee was not eligible for assistance. This notice set out that the reason for such action was:

As per 469 NAC 2-009.10 - An individual is ineligible if she deprives herself of resources by giving them away or by disposing of them for less than fair market value for the purpose of qualifying for assistance. The client [appellee] had been in a nursing home for a number of years; the son add [sic] Power of Attorney was well aware of her needs during the time the client's resources were being used by the POA for his own personal expenses. You may reapply when resources disposed of have been used to meet your mother's needs.

On August 9, 1985, Walter Zybach filed a "Notice and Petition for Fair Hearing" with the Department. This notice constituted an appeal to the director from the denial of assistance to appellee by the Department's local office, pursuant to Neb. Rev. Stat. § 68-1016 (Reissue 1986).

A hearing was held on this appeal, apparently by an administrative judge, on August 21, 1985. On September 18, 1985, the director of the Department issued a "Finding and Order" affirming the action of the Columbus local administrative office rejecting appellee's claim. Pursuant to Neb. Rev. Stat. § 84-917 (Cum. Supp. 1984), appellee timely appealed to the district court for Platte County by filing a

petition seeking reversal of the director's order. Defendants, Gina C. Dunning, Director, and the Department, answered by general denial.

The matter was submitted to the court on the certified "transcript of the proceedings in the matter of the administrative appeal of ROSE J. ZYBACH . . . ."

On March 31, 1986, the district court reversed the Department's order of September 18 and held that "the Plaintiff [appellee] should be entitled to benefits from August 5, 1985." The Department timely appealed to this court, assigning as error that "[t]he district court erred in holding that the action taken by the Department of Social Services in rejecting appellee's application for public assistance was unsupported by competent, material and substantial evidence and was arbitrary and capricious." We affirm.

The facts, as shown by the "transcription of the oral testimony given at the administrative hearing of August 21, 1985," and the exhibits received at that hearing, are as follows.

Appellee was first placed in the Columbus nursing home in 1973 at the suggestion of appellee's physician after appellee was found by her daughter-in-law, Walter's wife, Marjorie, "in bed, no clothes on, and her, and she and the scissors, her clothes were all cut up. There were frying pans on the stove, turned on, things were smoking . . . ." The son testified further that "we called our doctor in Omaha and he suggested we do this, put her in a home."

Walter testified that the appellee was incompetent at the time she entered the nursing home, that she had gotten much worse since entering the home, and that now she did not recognize him most of the time.

On May 25, 1974, a formal, 20-paragraph power of attorney was signed by the appellee, before a notary public, appointing her son, Walter Zybach, to act as her attorney in fact. Walter testified that he was advised appellee needed one "[t]o, to, when I had to borrow money that's the only way it could be done, the way I understood it." Walter further testified that when he took control of appellee's property with the power of attorney, "I understood we could use it any way we seen fit, that's the way I understood it."

At the time of the application for assistance, Walter and Marjorie Zybach explained to the worker processing appellee's application:

[T]his was a different situation than a lot of people have with their parents. . . . [T]hat in about 1950, [appellee] had asked them to stay around Columbus and not take a job with a company in California, and that she would "make it right with them" if they took care of her and helped her out.

Walter testified that appellee did not talk about salary or inheritance but that her statement meant appellee would financially take care of them.

On June 6, 1985, a Department worker checked with the register of deeds and determined that appellee originally owned a tract of farmland, with several small tracts sold between the years of 1953 and 1981 "from which proceeds she had paid nursing home care, as stated by the son in the original interview." The worker further reported that in 1981 the remainder of appellee's land was sold for $194,990.

The land was sold by Walter Zybach as appellee's attorney in fact. The net proceeds of the sale were $140,126.68 after expenses from the sale, except for income tax. On July 7, 1981, appellee, by her attorney in fact, gave gifts of $10,000 to appellee's daughter and $9,500 each to Walter and Marjorie from the proceeds of the sale of appellee's land. Walter told appellant's employees that appellee told Walter they were to receive some of the proceeds from the sale of the farm.

Walter testified that after the sale of the land he paid off a $35,000 loan on the farm and paid a capital gains tax of $28,000. Walter kept very few records or canceled checks and testified that he did not know what happened to the rest of the money, but stated that he "used it for [appellee's] care, I used some for ours."

The record shows that on December 31, 1984, appellee had remaining assets of $35,045 in certificates of deposit. Walter submitted a statement of expenditures detailing how the $35,045 was spent. It included a $10,000 stone and funeral fund in Walter and Marjorie's name, which Walter testified was held in a certificate of deposit; auto, home, accident, and life

insurance for Walter and Marjorie, $856; prescription drugs for appellee, $163.26, and for Walter and Marjorie, $1,301; doctor bills for Walter and Marjorie, $3,893; beauty shop bills for appellee, $150.50; an irrevocable funeral trust for appellee, $3,000; nursing home costs for appellee, $9,063; and miscellaneous living expenses, $4,552.50; with a balance in appellee's checking account of $2,066. On June 3, 1985, the appellee had a checking account balance of $3,302.42.

Both Walter and Marjorie testified that they have heart conditions. On June 11, 1985, they told the Department worker that Marjorie had "heart surgery in Omaha 3 weeks ago that cost $18,000" and that "Walter had been . . . disabled since 1971. At that time he suffered a heart attack and was told to do very little work."

It was on this evidence that appellant, in its finding and order, found that appellee "had available for her use at the time of the application . . . $3,302.42 and the $10,000 certificate of deposit held by her attorney in fact in his and his wife's name. This gave [appellee] resources in excess of program guidelines." The director further found that appellee "deprived herself of resources in the amount of $10,602.24 since January" and that "the $35,045 . . . available for her care . . . was disposed of in order to qualify for public assistance."

We note that in an appeal to the district court from a final decision of an administrative agency, under the Administrative Procedures Act, Neb. Rev. Stat. §§ 84-901 to 84-919 (Reissue 1981 & Cum. Supp. 1984), the district court

> may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the agency decision is:
>
> (a) In violation of constitutional provisions;
>
> (b) In excess of the statutory authority or jurisdiction of the agency;
>
> (c) Made upon unlawful procedure;
>
> (d) Affected by other error of law;
>
> (e) Unsupported by competent, material, and substantial evidence in view of the entire record as made on review; or

(f) Arbitrary or capricious.

§ 84-917(6) (Cum. Supp. 1984); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985).

The Supreme Court's review of an administrative agency's decision is de novo on the record. § 84-918 (Reissue 1981); *Haeffner v. State, supra; In re Complaint of Federal Land Bank of Omaha*, 223 Neb. 897, 395 N.W.2d 488 (1986). We have recognized that the scope of review from administrative agencies pursuant to statutes that provide specific procedures for appeal may be different. See *In re Application A-15738*, ante p. 146, 410 N.W.2d 101 (1987). In this case, no specific method of appeal is provided, and the scope of our review is de novo on the record.

Appellant argues in the brief on appeal that we need only consider the issues (1) whether appellee's resources were exhausted below the $1,600 maximum permitted to qualify for AABD/MA, on June 5, 1985, when appellee applied for assistance, and (2) whether appellee or her representative disposed of appellee's resources for the purpose of qualifying for public assistance.

With regard to its first contention, appellant asserts that at the time of appellee's application for assistance, her checking account was in excess of $3,000, which was over the $1,600 prescribed guideline for public assistance pursuant to Neb. Admin. Code tit. 469, ch. 2, §§ 2-009.08 and 2-009.09 (1985).

Section 2-009.09, which is set out in the record, concerns the consideration of the resources of a parent toward the eligibility of a child 18 or younger and has no application to appellee's case. Section 2-009.08 was not made a part of the record before us.

We have held:

Courts have ordinarily refused to take judicial notice of municipal ordinances or internal operating rules of administrative agencies or other courts, and have required a party seeking the benefit of such provisions to plead and prove the existence of the ordinance or rule. [Citations omitted.] Where such rules and regulations do not appear in the record nor in the bill of exceptions in this court, the court will not take judicial notice, nor consider the

validity, of the rule or rules or their application to the facts in the case.

*Nevels v. State*, 205 Neb. 642, 646, 289 N.W.2d 511, 513 (1980).

Such rules or regulations must be introduced in evidence and the party claiming under them has the burden of pleading and proving their existence and validity. *State v. Surber*, 221 Neb. 714, 380 N.W.2d 293 (1986); *Nevels v. State, supra.* We do not take judicial notice of § 2-009.08. Since § 2-009.08 does not appear in the record, we do not consider this issue.

We next consider appellant's contention that the next question to be resolved is whether the appellee or her representative, Walter Zybach, appellee's attorney in fact, disposed of appellee's resources for the purpose of qualifying for public assistance.

We first determine that appellant's question does not properly frame the issue. In this approach, appellant is relying on the provisions of Neb. Rev. Stat. § 68-1002 (Reissue 1986), which provides: "In order to qualify for assistance to the aged, blind or disabled, an individual: . . . (3) [must prove that the individual has] not deprived himself directly or indirectly of any property whatsoever for the purpose of qualifying for assistance to the aged, blind or disabled . . . ."

In applying this section of the statutes, appellant has adopted a regulation, which is in the record before us, entitled Neb. Admin. Code tit. 469, ch. 2, § 2-009.10 (1985), and which provides in part:

> An individual is ineligible if s/he deprives himself/herself of resources by giving them away or by disposing of them for less than fair market value for the purpose of qualifying for assistance. . . .
>
> . . . .
>
> The worker may also allow the client to produce evidence that may indicate the resource was disposed of for reasons other than to qualify for assistance (e.g., to repay debts) and, therefore does not affect eligibility.

In both the statute and the regulation, the disqualifying act is the act of depriving oneself of resources "for the purpose of qualifying for assistance." "Purpose," as used in both the statute and the regulation, means an "intention, or aim, object,

plan, project." Black's Law Dictionary 1112 (5th ed. 1979). An intention or plan requires intelligence to be applied to a problem in seeking a desired result.

In our de novo review, we find that appellee, Rose Zybach, did not at any pertinent time have sufficient mental capacity to do anything with any "purpose." While there was no medical testimony before the Department at the time of the administrative hearing, all the evidence submitted was to the effect that appellee was incompetent at the time she was admitted to the nursing home in 1973 and had gotten worse mentally with the passing years. The record also shows that at the time she allegedly acted with the "purpose of qualifying for assistance," appellee was nearly 94 years old and had been a resident of the nursing home for 12 years.

The only possible basis for holding that appellee had so acted would be that appellee had acted through her attorney in fact. Assuming, arguendo, that the attorney in fact had been properly appointed in May of 1974 and that appellee's incompetency had not terminated any power of attorney, the law is clear that any attorney in fact or agent has no implied or apparent authority to do that which the principal himself would not be authorized to do. *Johnson v. Shenandoah Life Insurance Company*, 291 Ala. 389, 281 So. 2d 636 (1973); 3 Am. Jur. 2d *Agency* § 71 (1986). In *Cooley v. Eskridge*, 125 Colo. 102, 113, 241 P.2d 851, 856-57 (1952), the Colorado Supreme Court stated: " 'It has been held that a servant can have no implied authority to do that which it could not be lawful, under any circumstances, for either him or his employer to do. . . .' " Section 68-1002(3) provides that it is unlawful for one to dispose of resources in order to qualify for assistance.

The dispositive fact that must be kept in mind is that appellee and her son, Walter, who is allegedly her attorney in fact, are two separate and distinct persons. Appellee apparently has no guardian. Appellee is a vulnerable older person who clearly needs assistance, either legal or financial. Through no fault of her own she has reached an age where she must rely on others. The carelessness or inattention of others cannot and should not be attributed to appellee.

We agree with the holding of the court in *Lee v. State*

*Department of Public Health & Welfare*, 480 S.W.2d 305, 309 (Mo. App. 1972), where the court stated: "Ergo, the statute condemns transfers produced or at least acquiesced in by a claimant; it does not undertake to discipline a claimant who is wholly passive in the matter and where the transfer results from the independent acts of third persons."

The fact is that this claimant needs assistance. That assistance must be provided to her, and the State may then take whatever steps it deems necessary to correct the situation. We find that appellee was entitled to assistance from the date of her application for assistance and that the order of the district court should be affirmed.

AFFIRMED.

KRIVOSHA, C.J., not participating.