**L. Jeanette MILLER, as Representative Plaintiff for Lottie Bernice Ham; Susan Turtness Adams as Representative Plaintiff for Marie Louise Turtness; Mary J. Henry, as Representative Plaintiff for Mary D. Cummings; and Larry Tasei, as Representative Plaintiff for Maria S. Tasei, Plaintiffs,**

v.

**Irene IBARRA, Executive Director of the Colorado Department of Social Services, Defendant.**

**Civ. A. No. 89–C–7.**

United States District Court,
D. Colorado.

Sept. 5, 1990.

**20**

Mary Catherine Rabbitt, Denver, Colo., for plaintiffs.

Anthony Trumbly, Denver, Colo., Gordon F. Esplin, Ft. Collins, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

The legal representatives of four aged, infirm and mentally incompetent women commenced this lawsuit in an effort to extricate their charges from the "Utah Gap." That is the popular nomenclature for a "Catch 22" in state health care policy that deprives many senior citizens of Medicaid payments for nursing home expenses to which they are otherwise entitled. When their incomes are too low to enable them to pay their own nursing home costs, but too high to qualify for Medicaid benefits, these claimants are ensnared in a trap created by the interaction of highly technical federal and state statutes and regulations. They are not allowed to pay as much as they can, and have Medicaid pay the balance, but instead are totally disqualified for any Medicaid assistance.

Plaintiff L. Jeanette Miller, as representative plaintiff for Lottie Bernice Ham, and intervenors Susan Turtness Adams, as representative plaintiff for Marie Louise Turtness,[1] Mary J. Henry, as representative plaintiff for Mary D. Cummings, and Larry Tasei,[2] as representative plaintiff for Maria S. Tasei commenced this suit seeking reversal of the Colorado Department of Social Services' decisions to deny their charges Medicaid benefits. Specifically, the plaintiff and the intervenors ("plaintiffs")[3] seek: (1) a declaratory judgment that income rendered unavailable by virtue of judicially imposed trusts created pursuant to Colo.Rev.Stat. § 15–14–409 (1987), may not be considered the patient-beneficiary's income for purposes of determining Medicaid eligibility under 42 U.S.C. § 1396a(a)(17) and 9 Colo.Code Regs. § 3.200.21 (1979); and (2) an injunction forbidding the defendant from continuing to treat income held in such trusts as "available" for purposes of determining eligibility for Medicaid. Defendant is Irene Ibarra, Executive Director of the Colorado Department of Social Services.

Currently pending are a motion for summary judgment filed by the plaintiff L. Jeanette Miller,[4] and a motion for summary judgment filed by the defendant. The defendant has responded by opposing Miller's motion for summary judgment. Plaintiff Miller, joined by the intervenors, has re-

1. Marie Louise Turtness' motion to intervene was granted on December 20, 1989.

2. Mary J. Henry's and Larry Tasei's motions to intervene were granted on April 19, 1990.

3. Instead of making references throughout this order to the representative plaintiffs, the term plaintiff(s) will refer to Lottie Bernice Ham, Marie Louise Turtness, Mary D. Cummings and Maria S. Tasei.

4. Although an individual plaintiff filed the motion for summary judgment, I will treat it as if filed by all the plaintiffs because the issues raised are dispositive as to all.

sponded by opposing the defendant's motion for summary judgment. After a hearing on April 20, 1990, I entered a temporary restraining order directing the defendant to provide Medicaid benefits to Maria Tasei to prevent her then imminent eviction from the Bear Creek Nursing Center. Subsequently the parties agreed to extend the temporary restraining order until final resolution of the matter. Reargument of certain legal issues was heard July 17, 1990.

The parties have fully briefed the issues and further oral argument would not materially assist my decision. Jurisdiction exists under 28 U.S.C. § 1331.

## I. Background.

### A. *Lottie Bernice Ham.*

Lottie Bernice Ham, who died March 20, 1989, spent the last eight and one-half years of her life in a nursing home. She suffered from Parkinson's Disease and complications following numerous strokes. She was completely paralyzed except for eye movements and had no ability to communicate. Skilled nursing care was required because: (1) she had to wear a catheter that required daily irrigation; (2) she was fed by inserting a syringe between her clenched jaws; (3) her esophagus had to be cleared of food with a special apparatus to prevent choking; and (4) she had to be turned in bed every two hours because of a decubitus ulcer on her coccyx.

Until her death, Lottie Ham resided in the Bear Creek Nursing Center, Morrison, Colorado. She received Medicaid benefits to pay nursing home costs for over four years of the time she resided in nursing homes. After her husband's death in July 1987, she became eligible for a survivor's pension. The pension placed her income above the limits for Medicaid eligibility, and therefore her medicaid benefits were terminated. Subsequently, she was forced to exhaust all her remaining assets, and her daughter, L. Jeanette Miller, had to spend over $40,000 to pay for her mother's nursing care.

On September 19, 1988, the district court of Jefferson County, Colorado, ordered that Lottie Ham's income be placed in trust and appointed L. Jeanette Miller as trustee. Although the trust instrument gave the trustee some discretion to pay Lottie Ham's living expenses, it specifically stated:

> "[i]n no event shall such amounts paid or applied each month for Beneficiary's basic living needs, from her income, the corpus of this trust, or any other source combined therewith, exceed the sum computed by subtracting twenty dollars ($20.00) from the monthly income eligibility standard currently in use by the Medicaid program administered by the State of Colorado for the support and maintenance of institutionalized persons. Any income not distributed in accordance with this paragraph shall be accumulated and added to the principal." (Plaintiff's motion for summary judgment, exhibit B, ¶ 3.01 (emphasis in original)).

Subsequent to creation of the trust, L. Jeanette Miller applied for Medicaid benefits on behalf of her mother. Her application was denied by the Colorado Department of Social Services and the denial was upheld by Colorado State Administrative Law Judge Thomas R. Moeller. The Bear Valley Nursing Center still sends L. Jeanette Miller collection notices for the unpaid balance owing for Lottie Ham's care. This balance includes charges for the last six months of Lottie Ham's life after denial of her application for Medicaid benefits.

### B. *Marie Louise Turtness.*

Marie Turtness suffers from Alzheimer's dementia, hypothyroidism and chronic skin ulcerations. She is totally incapacitated, both physically and mentally, and will require extended care and maintenance for the remainder of her life. She resides in the North Shore Manor Nursing Home, Loveland, Colorado.

On May 5, 1989, the district court of Larimer County, Colorado, created a trust for the benefit of Marie Turtness and required that all her income be converted to trust assets. The terms of this trust are identical to those of the Lottie Ham trust, *i.e.*, the trustee may not distribute more than $20.00 less than the maximum income

level for Medicaid eligibility. Subsequent to creation of this trust, Marie Turtness applied for Medicaid benefits. Her application was denied by the Larimer County Department of Social Services. An Administrative Law Judge and the Colorado Department of Social Services, Office of Appeals, upheld the denial of benefits.

### C.  *Mary D. Cummings.*

Mary Cummings suffers from complications caused by congestive heart failure, bilateral hip fractures, cataracts and diverticulitis. She has been immobile for several years, wears a colostomy bag, suffers incontinence of the bladder, and has poor vision. She requires continuous nursing care.

On August 4, 1989, the District Court of Boulder County, Colorado authorized Mary J. Henry to create a trust for the benefit of Mary Cummings. The operative terms of this trust are identical to those of the Lottie Ham and Marie Turtness trusts. On August 21, 1989, the Boulder County Department of Social Services denied Mary Cummings Medicaid benefits.

Mary Henry appealed to Colorado State Administrative Law Judge Thomas R. Moeller who reversed the denial of Medicaid benefits. Judge Moeller ruled that Mary Cummings' income was not "available" for medicaid eligibility purposes because the income was subject to the trust. He also ruled that creation of the trust was not a voluntary property transfer by Mary Cummings.[5]

Pursuant to Colo.Rev.Stat. § 24-4-105(14) (1988),[6] the Colorado Department of Social Services filed exceptions to the ALJ's decision. Thereafter, the agency reversed the ALJ and held that creation of the trust was a voluntary transfer without fair consideration, and therefore Mary Cummings was ineligible for Medicaid benefits.

### D.  *Maria S. Tasei.*

Maria Tasei is completely incapacitated by multiple sclerosis, and unable to care for herself or her affairs. She has resided in a nursing home for the last ten years. Presently, she lives at the Bear Creek Nursing Center, Morrison, Colorado. She lacks sufficient income or other financial resources to pay for her care.

Her nursing home charges $2,220.00 per month for housing and medications, but her income totals only $1,618.97 per month. This income is derived from a state retirement program and a Veteran's Administration benefit. Larry Tasei, Maria Tasei's son, has paid for her care for the last two and one-half years; *i.e.*, from the time her assets were depleted. However, he is unable to continue paying for his mother's care.

On February 9, 1990, the district court of Jefferson County, Colorado, authorized Larry Tasei to create a trust for the benefit of Maria Tasei. The terms of this trust are identical to those of the Lottie Ham, Marie Turtness and Mary Cummings trusts. On March 15, 1990, the Jefferson County Department of Social Services denied Maria Tasei Medicaid benefits.

On March 21, 1990, as a result of Larry Tasei's inability to pay, and before he was able to appeal the denial of his mother's benefits to an ALJ,[7] the Bear Creek Nurs-

**5.** It is noteworthy that Judge Moeller reversed the Boulder County Department of Social Services' decision to deny Medicaid benefits to Mary Cummings because he is the same Administrative Law Judge who upheld the Jefferson County Department of Social Services' decision to deny benefits to Lottie Ham. Judge Moeller also reversed two other unrelated decisions by Boulder and Jefferson County Departments of Social Services after he upheld the denial of benefits to Lottie Ham. In these decisions, Judge Moeller ruled that income subject to trusts identical to those created on behalf of the instant plaintiffs was unavailable for Medicaid

purposes. (Plaintiff's response to defendant's motion for summary judgment, exhibits 1 & 2).

**6.** § 24-4-105(14) provides that: "[i]n the absence of an appeal to the agency by filing exceptions within thirty days after service of the initial decision of the administrative law judge ... every such initial decision shall thereupon become the decision of the agency."

**7.** As stated, the Colorado Department of Social Services has consistently taken the position that the trusts employed by the plaintiffs constitute transfers without fair consideration and render

ing Center gave notice that on April 20, 1990, it would evict Maria Tasei. Larry Tasei here contends that alternative living arrangements for his mother are not available. He emphasizes that he has assisted in paying for her care but has now exhausted his ability to pay. Maria Tasei's treating physician has concluded that she requires nursing home care for the rest of her life. (Tasei's motion for preliminary injunction, exhibit 3). I entered a temporary restraining order preventing the Colorado Department of Social Services from denying Maria Tasei benefits, and the parties, by agreement, have extended that order until final resolution of this matter.

## II. Discussion.

*Department of Health, State of California v. Secretary of Health and Human Services*, 823 F.2d 323 (9th Cir.1987), addressing the Medicaid statute, declared:

"Medicaid, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a cooperative federal-state endeavor designed to provide health care to needy individuals. *Atkins v. Rivera*, 477 U.S. 154, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986); *Harris v. McRae*, 448 U.S. 297, 308, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980). A state is not required to participate in Medicaid, but once it chooses to do so, it must create a plan that conforms to the requirements of the Medicaid statute and the federal Medicaid regulations. *Washington v. Bowen*, 815 F.2d 549, 552 (9th Cir.1987).

Participating states must provide Medicaid coverage to the "categorically needy." The categorically needy are those persons eligible for cash assistance under the SSI program, 42 U.S.C. § 1381, et seq., or the AFDC program, 42 U.S.C. § 601 et seq. *Atkins v. Rivera*, 106

S.Ct. at 2458. SSI and AFDC are designed to provide financial assistance for basic necessities, but not medical expenses. Accordingly, Congress has directed participating States to supply Medicaid coverage to these "especially deserving" persons, who would otherwise be unable to meet their medical expenses. *Schweiker v. Gray Panthers*, 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981).

\* \* \* \* \* \*

To determine if an individual is entitled to Medicaid benefits, a State may consider only the income and resources "available" to the applicant. 42 U.S.C. § 1396a(a)(17)." *Id.* at 325.

Colorado has elected to participate in the Medicaid program by enacting the Colorado Medical Assistance Act. *See* Colo.Rev. Stat. § 26–4–101 *et seq.* (1989). The Colorado State Board of Social Services has promulgated rules and regulations for implementation of the Medicaid program. 10 Colo.Code Regs. §§ 8.00 *et seq.* (1978). Additionally, Colorado has elected to participate in the optional Medicaid program designed to offer medical assistance to persons residing in medical institutions for not less than thirty consecutive days. 10 Colo. Code Regs. § 8.110.30 *et seq.* (1988). To be eligible, an applicant must meet certain financial resource limitations, and have income not exceeding 300% of the Supplemental Security Income (SSI) benefit rate established under Title XVI of the Social Security Act. 42 U.S.C. § 1396a(a)(10)(A)(ii)(V).[8]

As stated, both the defendant and the plaintiff L. Jeanette Miller have filed motions for summary judgment. The issues involved arise out of the parties' divergent interpretations of the federal and state Medicaid statutes and regulations outlined

---

the beneficiaries ineligible for Medicaid benefits. The Colorado Department of Social Services maintains this position even though at least one Administrative Law Judge has held that income subject to these trusts is not available for Medicaid eligibility purposes. Therefore, I conclude that it would be futile to require Larry Tasei to exhaust his administrative remedies by appealing to an ALJ the Jefferson County Department of Social Service's decision to deny his

mother Medicaid benefits. *See Hayes v. Unified School District No. 377*, 877 F.2d 809, 814 (10th Cir.1989).

**8.** All the plaintiffs in this action have applied for and have been denied Medicaid benefits under this optional program for institutionalized individuals.

above. Specifically, the parties have raised the following issues:

(1) Whether improper denial of Medicaid benefits is actionable under 42 U.S.C. § 1983;

(2) Whether the plaintiffs' incomes placed in trust should be considered "available" for purposes of 42 U.S.C. § 1396a(a)(17)(B) and 9 Colo.Code Regs. § 3.200.21 (1979);

(3) Whether creation of the trusts constituted disposing of resources for less than fair market value within the meaning of 42 U.S.C. 1396p(c) or transfers without fair consideration in violation of 9 Colo.Code Regs. § 3.210.31 (1979); and

(4) Whether the trusts are medicaid qualifying trusts within the meaning of 42 U.S.C. § 1396a(k).

These issues will be addressed in the stated order.

A. *Standard for Summary Judgment.*

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Catrett* the Court held that Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. The Court explained:

"In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with re-

spect to which she had the burden of proof." *Id.* at 322–23, 106 S.Ct. at 2552. Because the issues before me present only questions of law summary judgment is appropriate.

B. *Would improper denial of Medicaid benefits be actionable under 42 U.S.C. § 1983?*

▊ Defendant asserts in her motion for summary judgment that the plaintiffs' sole remedy is circumscribed in Title XIX of the Social Security Act at 42 U.S.C. §§ 1396a(a)(3) and 1396c. Section 1396a(a)(3) requires all state plans to: "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." Section 1396c allows the Secretary of Health and Human Services to withhold federal payments from a state department of social services if that state's plan does not comply with federal requirements. Defendant contends that because § 1396a(a)(3) requires state plans to provide an opportunity for a hearing, Congress intended to foreclose other avenues of relief.

Defendant relies on *Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) where the Court stated:

"[t]he comprehensive character of [a] remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies. It is, of course, not within our competence as federal judges to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized by Congress." *Id.* at 93–94, 101 S.Ct. at 1582.

Defendant also asserts that "[e]fforts to conjure up 42 U.S.C. § 1983 causes of action under similar federal legislative schemes have been rejected by other federal courts." (Defendant's motion for summary judgment, at 6) (citing *Tyler v. Pasqua and Toloso,* 748 F.2d 283 (5th Cir. 1984)). Defendant argues that because *Ty-*

*ler* barred a § 1983 action to challenge denial of Food Stamp benefits and the Food Stamp Act provides for the same type of appellate review as the Medicaid Statute, this court should reject the present action.

However the defendant's reliance on *Tyler* is clearly misplaced in light of *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), where the Court stated: "if there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Id.* at 423, 107 S.Ct. at 771. On the basis of *Wright,* the Fifth Circuit expressly overruled *Tyler. See Victorian v. Miller,* 813 F.2d 718 (5th Cir.1987). *Victorian* held that § 1983 actions for improper food stamp denial are not barred because the remedial scheme in the Food Stamp Act did not demonstrate a Congressional intent to preclude § 1983 actions as remedies for such denials. *Id.* at 723–24.[9]

Nothing in § 1396a(a)(3) or § 1396c indicates a Congressional intent to bar § 1983 claims. Further, the defendant has failed to demonstrate "by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright, supra,* 479 U.S. at 423, 107 S.Ct. at 771. For these reasons, I conclude that the plaintiffs may invoke § 1983 to challenge denial of Medicaid benefits. Therefore, the defendant's motion for summary judgment on this ground is denied.

C. *Availability of trust income in determining Medicaid eligibility.*

■ As stated, Colorado has elected to participate in the optional Medicaid pro-gram designed to offer medical assistance to patients residing in medical institutions. 9 Colo.Code Regs. § 8.110.30 *et seq.* To be eligible, an individual must meet certain financial resource limitations, and have income not exceeding 300% of the Supplemental Security Income (SSI) benefit rate established by Title XVI of the Social Security Act. 42 U.S.C. § 1396a(a)(10)(A)(ii)(V). To determine eligibility for and the extent of Medicaid assistance, state plans are allowed to take into account only income that is actually "available" to the claimant. 42 U.S.C. § 1396a(a)(17)(B). Colorado regulations state that:

"Resources and income shall be considered available both when actually available and when the applicant or recipient has a legal interest in a sum (includes cash or equity value of a resource) and has the legal ability to make such sum available for support and maintenance." 9 Colo.Code Regs. § 3.200.21 (1979).

Plaintiffs assert that creation of the instant trusts divested them of all ownership rights in the trust corpora. They contend that Colorado law governs characterization of the nature and extent of their interests in the trust assets. (Plaintiffs' brief in support of motion for summary judgment, at 5 (citing *Cannuni v. Schweiker,* 740 F.2d 260, 264 (3d Cir.1984)). Plaintiffs argue that the trustees, not the beneficiaries, have legal title to the trust property. According to the plaintiffs:

'Where the [t]rust permits the [t]rustees to distribute to a beneficiary or beneficiaries so much, if any, of the income and principal as they in their discretion see fit to distribute, *a beneficiary has no property interest or rights in the undistributed funds....* Although a beneficiary of such a discretionary trust does have rights therein, those rights are merely an expectancy and *do not rise to the level of property.*' (Plaintiffs' brief in support of motion for summary judg-

---

**9.** It is inconceivable why counsel for the defendant, once notified of *Wright* and *Victorian,* did not withdraw that portion of his motion for summary judgment addressing the plaintiffs' § 1983 claims or at the very least offer some explanation of how research efforts had failed to reveal these decisions. Counsel for the defendant is reminded of his duty under Rule 11, Fed.R.Civ.P. and potential exposure to sanctions under that rule and 28 U.S.C. § 1927 for frivolous and vexatious expansion of the proceedings before this court.

ment, at 6) (quoting *In Re: The Marriage of Rosenblum*, 43 Colo.App. 144, 602 P.2d 892, 894 (1979) (emphasis added in brief).

Additionally, the plaintiffs assert that spendthrift trusts are recognized in Colorado as restricting the rights of beneficiaries to trust proceeds. *Snyder v. O'Conner*, 102 Colo. 567, 81 P.2d 773, 774 (1938). Finally, the plaintiffs argue that because a beneficiary has no present ownership of or lien upon the assets of the trust (citing *Colby v. Riggs National Bank*, 92 F.2d 183, 199 (D.C.Cir.1937)), and a spendthrift trust is not terminable by the beneficiaries (citing 76 Am.Jur.2d, *Trusts*, § 76 (1975)), the trust property should not be considered "available" to the plaintiffs. (Plaintiffs' brief in support of motion for summary judgment, at 7–8).

Defendant does not directly address the "availability" issue. Instead, the defendant argues that creation of the trusts violates federal and state law prohibiting transfers for less than fair market value and without fair consideration. Such violations, the defendant contends, render the plaintiffs ineligible for Medicaid benefits. These contentions will be addressed after examining the plaintiffs' arguments concerning availability.

Because federal law requires that Medicaid eligibility be determined using the same methodology for the treatment of resources as is applicable to the SSI program, reference to SSI regulations is appropriate. Those regulations define "resources" to be counted, for purposes of determining SSI eligibility, as follows:

"Resources mean cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it is considered a resource. **If a property right cannot be liquidated, the property will not be considered a resource of the individual (or**

spouse)." 20 C.F.R. § 1416.1201(a) (emphasis added).

Although there is no direct discussion of trusts in the federal regulations,[10] a series of policy interpretations by the Social Security Administration, called the Program Operations Manual System ("POMS"), are relied upon in making eligibility determinations. The POMS provisions regarding trusts state:

"If the claimant/beneficiary's access to the trust principal is restricted (e.g., only the trustee or court, etc., can invade the principal), the principal is not a resource to the claimant.... If the claimant/beneficiary has no right to the income from the trust principal and the income is added to the principal, then the earnings from the trust principal are not income to the claimant for SSI purposes." (Plaintiffs' brief in support of motion for summary judgment, exhibit F).

Colorado regulations addressing availability of resources and income held in trust state:

"When ownership is in a form such as life estate, trust, or leasehold, it must be determined whether the person has the right to use the property as well as the authority to dispose of that right. If so, the property is then considered an available resource." 9 Colo.Code Regs. § 3.210.16 (1987).

Lastly, other jurisdictions have ruled on the availability of trust funds in determining Medicaid eligibility. *See Zeoli v. Commissioner of Social Services*, 179 Conn. 83, 425 A.2d 553, 558–59 (1979) (trust funds subject to trustee's sole discretion not available for Medicaid purposes under 42 U.S.C. § 1396(a)(17)(B)); *Tidrow v. Director, Missouri Division of Family Services*, 688 S.W.2d 9, 13–14 (Mo.App.1985) (trust funds subject to spendthrift clause, and clause giving trustee discretion to disburse funds for beneficiaries' "reasonable comfort," held not available for Medicaid purposes under 42 U.S.C. § 1396a(a)(17)(B)); *Oddo v. Blum*, 83 A.D.2d 868, 442 N.Y.S.2d 23, 24 (1981) (trust assets not considered in determining

---

**10.** As noted above, the parties have raised the applicability of a federal law addressing

Medicaid qualifying trusts, 42 U.S.C. § 1396a(k). This issue is addressed below.

eligibility for medical assistance where trustee has sole discretion to invade trust principal); *Lineback v. Stout,* 79 N.C.App. 292, 339 S.E.2d 103, 108 (1986) (trust funds which may be distributed by trustee after consideration of "income available to [beneficiary] from other sources" held not available as substitute for public assistance); *Lang v. Department of Public Welfare,* 515 Pa. 428, 528 A.2d 1335, 1345 (1987) (funds subject to trust providing that they be disbursed only to extent state assistance not available for support, held not available for Medicaid purposes); *Chenot v. Bordeleau,* 561 A.2d 891, 893 (R.I.1989) (assets in discretionary trust not considered a resource for Medicaid eligibility).

As stated, the trusts here involved give the trustees full discretion to disburse funds up to a level $20.00 below the applicable Medicaid maximum income eligibility level, but the trust funds may be used *only* to supplement other benefits received by the beneficiaries and not to supplant them. The trusts were created by the various probate courts to protect the plaintiffs' assets because courts found the plaintiffs incompetent. Furthermore, because applicable federal and state laws dictate that income and resources may only be considered available for consideration in determining Medicaid eligibility when the applicant has actual ownership, I find and conclude that the plaintiffs' income subject to the trusts is not "available" within the meaning of 42 U.S.C. § 1396a(a)(17)(B) and 9 Colo.Code Regs. § 3.200.21. The state district courts of Boulder, Jefferson and Larimer Counties removed all vested property interests the plaintiffs had in their respective incomes.[11]

Lastly, I conclude that each plaintiffs' annual income, for purposes of determining Medicaid eligibility in accordance with the SSI program, is the maximum amount the trustees of that plaintiff's trust can distrib-

ute, assuming the full exercise of discretion on the part of each trustee. As stated, this amount is $20.00 less than the applicable income level for Medicaid eligibility. Therefore, the plaintiffs are entitled to summary judgment on the issue of availability.

D. *Creation of the trusts as transfers for less than fair market value under 42 U.S.C. § 1396p(c) or transfers without fair consideration under 9 Colo.Code Regs. § 3.210.31 (1979).*

■ Defendant contends that before a county department of social services undertakes determination of a Medicaid applicant's income availability, pursuant to the methodology set out above, it must ascertain whether that applicant has violated the transfer of resources rules set out in 42 U.S.C. § 1396p(c)(1) and 9 Colo.Code Regs. § 3.210.21.[12] Relying on *Deel v. Jackson,* 862 F.2d 1079 (4th Cir.1988), the defendant argues that the Colorado prohibitions on transfers without fair consideration do not conflict with availability principles. Defendant asserts this position even though *Deel* interpreted Virginia's transfer of asset regulations that are part of that state's program of Aid to Families with Dependent Children. *Deel,* 862 F.2d at 1081–85. Before addressing the applicability of *Deel,* it will be helpful to examine the federal and state statutes and regulations prohibiting transfers without fair consideration.

As noted previously, Medicaid is a cooperative program sharing responsibility between state and federal governments. Although Medicaid is largely financed by the federal government, states bear the primary responsibility for administering it. The spirit in which state modifications of federally financed, but state administered, assistance programs should be interpreted is exemplified in *Deel.* There the Fourth Circuit stated:

"The Supreme Court has emphasized the value of the state role in AFDC ad-

11. As stated, Colorado Medicaid regulations require that an applicant have a legal interest in a sum of money and have the legal authority or capacity to make the sum available. 9 Colo. Code Regs. § 3.200.21. Additionally, these regulations provide that if the assets are held in a trust, it must be determined whether the appli-

cant has the right to use, and the authority to dispose of, the trust assets. 9 Colo.Code Regs. § 3.210.16.

12. For this reason, the defendant did not address the availability issue that was thoroughly discussed by the plaintiffs.

ministration. In *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), for example, the Court upheld New York AFDC rules requiring able applicants to register for training and employment against a claim that the rules conflicted with federal law. The Court stated that '[t]he problems confronting our society in [the area of welfare administration] are severe, and state governments, in cooperation with the Federal Government, must be allowed considerable latitude in attempting their resolution.' *Id.* at 413, 93 S.Ct. at 2513. The Court's opinion in *Dublino* underscores the fact that Congress cannot prescribe every detail of a program as complex as AFDC. If it could, state agencies would serve no independent purpose. The reality, however, is that state flexibility allows the development of specifically tailored solutions to specific problems, and provides fifty state proving grounds in which the efficacy of administrative innovations can be tested." *Deel*, 862 F.2d at 1083.

One purpose evident in the federal and state Medicaid laws, like their counterparts in the programs of Aid to Families with Dependent Children, is to prevent abuse of the Medicaid system. For example, federal and state laws provide for periods of ineligibility when individuals attempt to become eligible for Medicaid benefits by disposing of assets.

Congress' concern in enacting the federal limitations on transfers of assets was to prevent the wealthy from disposing of assets in order to become eligible for Medicaid benefits to which they would otherwise not be entitled. *See* 42 U.S.C. § 1396a(k) (medicaid qualifying trusts) [13] and 42 U.S.C. § 1396p(c) (transfers for less than fair market value). Specifically relevant to the instant case, federal Medicaid law imposes guidelines, under 42 U.S.C. § 1396a(a)(10)(A)(ii)(V), on states that elect to offer medical assistance to individuals residing in a medical institution for a period of not less than thirty consecutive days. A state plan must:

"provide for a period of ineligibility for nursing facility services ... in the case of an institutionalized individual ... who, or whose spouse at any time during or after the 30–month period immediately before the date the individual becomes an institutionalized individual ... or ... the date the individual applies for such assistance while an institutionalized individual disposed of resources for less than fair market value. The period of ineligibility shall begin with the month in which such resources were transferred and the number of months in such period shall be equal to the lesser of—

(A) 30 months, or

(B)(i) the total uncompensated value of the resources so transferred, divided by (ii) the average cost, to a private patient at the time of the application, of nursing facility services in the State or, at State option, in the community in which the individual is institutionalized." 42 U.S.C. § 1396p(c)(1).

In response to this requirement in § 1396p(c)(1), Colorado regulations provide: "[a] resource must be counted if transferred without fair consideration for the purpose of establishing or retaining eligibility for financial assistance. In regard to an applicant or recipient, such a property transaction is a factor of eligibility if it incorporates *all three* of the following elements: the transfer, assignment or sale of a resource was

a. voluntary,

b. without fair and valuable consideration, and

c. for the purpose of rendering such applicant or recipient eligible for assistance; the county makes a rebuttable presumption that the transaction was for such purpose when the transfer was made any time during the 5–year period immediately prior to the filing of application for assistance or during such time that assistance was being received." 9 Colo.Code Regs. § 3.210.31 (1979).

Under Colorado law, a transfer without fair consideration is "a property transac-

**13.** Medicaid qualifying trusts are addressed below.

tion in which the proceeds of the transfer, assignment, or sale are less than the value of the resource." 9 Colo.Code Regs. § 3.210.41. Specifically relating to the creation of trusts, Colorado regulations state:

"[e]xcept for a trust deposit for burial expenses, a transfer of ownership of property, real or personal, to an *irrevocable* trust must be considered a transfer without fair consideration since the person who created the trust does not retain the right to dissolve or amend the trust for purposes of obtaining the resources." 9 Colo.Code Regs. § 3.210.43.[14]

Colorado regulations also provide a method of determining the period of ineligibility. They state:

"When an applicant or recipient transfers assets without fair consideration, the county department shall determine the number of months of ineligibility. (This rule is not applicable to the AFDC program).

a. Determine the actual value less encumbrances;

b. Reduce the actual value less encumbrances by incurred medical expenses from date of transfer;

c. Determine standard of assistance from date of transfer;

d. Divide the transfer without consideration by the standard of assistance;

e. This equals the number of months of ineligibility;

f. The period of ineligibility for financial assistance shall not exceed five years from date of transfer." 9 Colo. Code Regs. § 3.210.46.

Defendant maintains that the creation of each of the instant trusts constituted a transfer that violated these federal and state rules. Specifically, the defendant ar-

gues: (1) that the purpose behind creating the trusts was clearly to qualify the plaintiffs for Medicaid benefits; (2) that the transfer of assets to the trusts "was made without *any* consideration and thus necessarily was made without 'fair' consideration;" (3) that the transfers were made voluntarily even though undertaken by the plaintiffs' personal representatives; and (4) that, as noted by the administrative law judge who upheld the Jefferson County Department of Social Services' denial of benefits to Lottie Ham, the trusts were merely devices intended to create fictional barriers to consideration of the plaintiffs' income in determining Medicaid eligibility. (Defendant's brief in support of motion for summary judgment, at 8–9).

Plaintiffs contend that the Colorado and federal transfer of asset regulations, availability principles notwithstanding, do not apply to creation of the instant trusts. First, the plaintiffs assert that the Colorado regulations do not apply because the transfers at issue were not voluntary.[15] Second, they argue that, under Colorado law, the creation of each trust by that plaintiff's representative at the behest of a probate court, did not constitute a "transfer" by that plaintiff. Third, they contend that the federal and Colorado regulations were intended to prevent the transfer of assets in the form of "resources" or principle, and they do not apply to the transfer of income. The plaintiffs claim this distinction is evidenced in the federal and Colorado regulations prohibiting transfers. These contentions will be addressed in the order stated.

1. Voluntariness.

*Zybach v. Nebraska, Department of Social Services*, 226 Neb. 396, 411 N.W.2d

14. Federal regulations provide that an individual applying for Medicaid must be notified of the prohibition against transfers for less than market value. 42 U.S.C. § 1382b(c). Additionally, federal statutes also provide exceptions to the period of ineligibility prompted by a transfer for less than market value. 42 U.S.C. § 1396p(c)(2)(C) provides that:

"[a]n individual shall not be ineligible for medical assistance by reason of [disposing of resources for less than fair market value] to the extent that—a satisfactory showing is

made to the State (in accordance with any regulations promulgated by the Secretary) that (i) the individual intended to dispose of the resources either at fair market value, or for other valuable consideration, or (ii) the resources were transferred exclusively for a purpose other than to qualify for medical assistance."

15. As noted above, 9 Colo.Code Regs. § 3.210.31 requires that three factors be present including that the transfer be voluntary.

627 (1987) interpreted a Nebraska statute that provides: "In order to qualify for assistance to the aged, blind or disabled, an individual: ... (3) [must prove that the individual has] not deprived himself directly or indirectly of any property whatsoever for the purpose of qualifying for assistance to the aged, blind or disabled...." *Id.* at 402, 411 N.W.2d at 631 (quoting Neb.Rev. Stat. § 68–1002(3) (1986)). *Zybach* held that the statute only " 'condemns transfers produced or at least acquiesced in by a claimant; it does not undertake to discipline a claimant who is wholly passive in the matter and where the transfer results from the independent acts of third persons.' " *Id.* at 404, 411 N.W.2d at 632 (quoting *Lee v. State Department of Public Health & Welfare,* 480 S.W.2d 305, 309 (Mo.App.1972)). As the plaintiffs correctly point out, the probate courts, not the plaintiffs, established the instant trusts in the interest of the plaintiffs. The probate courts found the plaintiffs to be incompetent and thus wholly passive and incapable of voluntarily transferring assets.

Additionally, under Colorado law the creation of a conservatorship is not a transfer. Colo.Rev.Stat. § 15–14–420(4) provides that:

> "[t]he appointment of a conservator is not a transfer or an alienation within the meaning of the general provisions of any federal or state statute or regulation ... imposing restrictions upon or penalties for the transfer or alienation...."

Moreover, Colorado regulations defining transfers without fair consideration include an irrevocable trust as such a transfer only if **created by the beneficiary.** 9 Colo.Code Regs. § 3.210.43. Similarly federal law prohibits only **an individual who applies for Medicaid** from disposing of property for less than fair market value. 42 U.S.C. § 1396p(c)(1). In the instant case, however, the beneficiaries (the plaintiffs) did not create the trusts, and the individuals who applied for Medicaid did not dispose of any property.

For these reasons and because a Colorado probate court must make a finding of incompetence pursuant to Colo.Rev.Stat.

§ 15–14–101(1) before it may order the creation of a trust pursuant to Colo.Rev.Stat. § 15–14–409, I find and conclude that the instant trusts were not created voluntarily by these plaintiffs.

2. Whether Creation of Trusts Constituted Transfers by Plaintiffs.

Plaintiffs contend that the defendant's assertion that creation of the trusts should be considered transfers imputed to the plaintiffs considers neither the factual realities that prompted the probate courts to order creation of the trusts, nor the legal effect of incompetency proceedings. According to the plaintiffs:

> The [probate] court's authority for creating the trusts is found in [Colo.Rev. Stat.] §§ 15–14–408(4) and 15–14–409, which permit the court to 'create revocable or irrevocable trusts of property of the [protected person's] estate' and to 'authorize, direct or ratify any transaction necessary or desirable to achieve any security, service or care arrangement meeting the foreseeable needs of the protected person.' Under these statutory provisions, the court has broad discretion to fashion appropriate arrangements for the management of an incompetent person's property and affairs. *See In re: A.W.,* 637 P.2d 366 (Colo. 1981).

It must be emphasized, however, that a probate court must make certain findings before creating a trust. First, the court must make a finding of incompetence. Colo.Rev.Stat. § 15–14–401(3) (1987). Second, the incompetent person must have property subject to a threat of being dissipated or wasted, or funds must be needed for support, care and welfare of the person. *Id.* Third, the creation of the trust must be in the best interest of the incompetent person. Colo.Rev.Stat. § 15–14–409(2) (1987). When these three elements are present, the probate court must exercise its authority in the best interest of the incompetent person.

In the case of the plaintiff Lottie Ham, it is clear from the language used by the probate court that it made the necessary

determinations.[16] The court first found that Mrs. Ham's medical condition prevented her from managing her personal and financial affairs. The court further found that:

"[Mrs. Ham] has property which is in danger of being dissipated unless a protective arrangement is provided, but the needs of the protected person will be better served by the establishment of a trust for her benefit than by the continuation of the conservatorship currently in place." (Plaintiff's brief in support of motion for summary judgment, exhibit C).

Defendant asserts that because the probate courts have authority to exercise all the powers the plaintiffs (absent incompetence) could exercise for themselves, I should treat the creation of the trusts as transfers by the plaintiffs. Although it is true that probate courts can act in the best interest of the plaintiffs pursuant to Colo. Rev.Stat. § 15–14–401 and § 15–14–409, such courts do not act as the plaintiffs themselves. Instead, these courts are governed by an objective best interest standard. That a court has authority to act in a person's best interest does not indicate that that person has competence to perform the same act on her own behalf. Indeed, the fact that court action is justified or necessary indicates the opposite. Thus the state's argument undermines its premise.

Additionally, the defendant asserts that federal Department of Health and Human Services guidelines applicable to Medicaid qualifying trusts are persuasive authority supporting her contention that the trusts should be treated as transfers by the plaintiffs. The cited guidelines provide:

"A trust that is established by an individual's guardian or legal representative, acting on the individual's behalf, falls under the definition of a Medicaid qualifying trust. If an individual is not legally competent, for example, a trust established by his legal guardian (including a parent) using the individual's assets can be treated as having been established by the individual, since the individual could not establish the trust for himself." Department of Health and Human Services, Health Care Financing Administration, State Medicaid Manual, Part 3—Eligibility, Transmittal No. 37, at 2 (May 1989). (Defendant's response to plaintiff's motion for summary judgment, exhibit A).

These guidelines, however, have never been promulgated as regulations even though issued in May 1989. Because they were not promulgated in accordance with the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, and the agency has not acted on them for over fourteen months, they are not binding here.

Finally, the plaintiffs argue that their position that creation of the instant trusts did not constitute voluntary transfers is strengthened by the results of a recent Colorado Department of Social Services board meeting. On May 4, 1990, the Colorado Board of Social Services considered a proposed amendment to a regulation that would have expressly defined creation of the instant trusts as transfers by the plaintiffs. The proposed amendment provided:

"If the owner of property is a minor or otherwise legally incompetent, that fact shall not necessarily establish that the transfer of the owner's property is involuntary. Where the incompetent person's legal representative (e.g., parent, guardian, conservator, a court of law, or other representative) voluntarily transfers the owner's property for reasons which purport to benefit the owner, such a transfer shall be considered a voluntary transfer by the owner himself." (Proposed revision to 9 Colo.Code Regs. § 3.210.34, Colorado Board of Social Services, May 4, 1990).

This proposed amendment, however, was voted down.

For the above stated reasons, I conclude as to each trust that its creation was neither a voluntary transfer on the part of the plaintiff/beneficiary nor a transfer that can be imputed to that plaintiff.

### 3. Income versus Resources.

As additional support for their contention that Colorado and federal law do not apply

---

**16.** Although the other probate courts made the requisite findings on behalf of the other plaintiffs, I will only quote from Judge Moeller's findings as to Lottie Ham.

to creation of the instant trusts, the plaintiffs refer to 9 Colo.Code Regs. § 3.200.31 and 20 C.F.R. § 416.1207(d). Section 3.200.3 provides:

> "DISTINGUISHING RESOURCES FROM INCOME
>
> .31 For the purpose of distinguishing resources from income to determine whether resources or income rules apply:
>
> a. *resources* mean those properties an individual or family already has as of the first of a calendar month, or as of the date of application if not counted as income for the application month;
>
> b. *income* in general means cash, payments, wages, in-kind receipt, inheritance, gift, prize, rents, dividends, interest, etc., that are received by an individual or family during a particular calendar month."

The regulations, in 20 C.F.R. § 416.1207(d), further provide:

> "*Treatment of items under income and resource counting rules.* Items received in cash or in kind during a month are evaluated first under the income counting rules and, if retained until the first moment of the following month, are subject to the rules for counting resources at that time."

Plaintiffs contend that the previously quoted Colorado and federal statutes prohibiting transfers without fair consideration prohibit only the transfer of resources or corpus, not income. See 9 Colo.Code Regs. § 3.210.31; and 42 U.S.C. § 1396p(c)(1). Furthermore, the plaintiffs point out that the only assets placed in the instant trusts are various types of monthly income payments.

The clear distinction between resources and income recognized by both the Colorado and federal regulations indicates that these regulations were intended to prohibit transactions other than those here in question. Congress sought to discourage wealthy individuals from transferring their assets to irrevocable trusts in order to qualify for Medicare so that they could preserve their estates for their heirs, rather than being required to exhaust personal assets for medical and nursing home care.

Defendant has not provided, and my research has not produced, any evidence that the statutes and regulations prohibiting the transfer of resources were meant to apply to the circumstances here presented. Here, the probate courts created the trusts in the interest of the plaintiffs, not the plaintiffs' heirs. Colo.Rev.Stat. § 15–14–409(2). Any funds accumulating in these trusts will be transferred to the Colorado Department of Social Services upon the plaintiffs' deaths. Plaintiffs' heirs will never receive any assets or payments from the trusts.

Furthermore, the penalty provisions in the federal and Colorado regulations that bar transfers without fair consideration, calculate a period of ineligibility by dividing the value of the **resource** transferred by the monthly expenditure an applicant pays for nursing home care at the time of application. These statutes do not provide a method of determining ineligibility where an applicant's *income* is transferred to a trust. *See* 42 U.S.C. § 1396a(a)(10)(A)(ii)(V); and 9 Colo.Code Regs. § 3.210.46.

Finally, because I conclude that the payments placed in trust for the plaintiffs are not resources, and therefore the federal and state statutes and regulations barring transfers without fair consideration do not apply, my decision is not inconsistent with that of the Fourth Circuit in *Deel v. Jackson,* 862 F.2d 1079 (4th Cir.1988). *Deel* correctly concluded that Virginia's transfer of asset regulations are not in conflict with availability principles. *Deel,* however, addressed a fact pattern where the applicant had transferred "a 59 acre parcel of land to her daughter and son-in-law for less than fair market value two days prior to applying for AFDC benefits." *Id.* at 1081. Thus *Deel,* is distinguishable, for in the instant case only income payments have been placed in trust for the plaintiffs. Nor did these plaintiffs, as in *Deel,* transfer resources to their heirs, to qualify for Medicaid. Therefore, *Deel* is not dispositive because it is distinguishable on its facts.

For these reasons, I conclude that the acts creating the instant trusts were not transfers prohibited by 42 U.S.C. § 1396p(c) and 9 Colo.Code Regs. § 3.210.31, and therefore the plaintiffs are entitled to summary judgment on this issue.

E. *Creation of the Trusts as Medicaid Qualifying Trusts—42 U.S.C. § 1396a(k).*

■ In addition to intending to prohibit transfers for less than fair market value, Congress intended to forbid the creation of medicaid qualifying trusts to meet income eligibility requirements. The applicable statute, 42 U.S.C. § 1396a(k), states:

"a 'medicaid qualifying trust' is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." 42 U.S.C. § 1396a(k)(2).

Additionally, § 1396a(k)(1) dictates what portions of income from medicaid qualifying trusts should be considered "available" to an applicant for purposes of determining Medicaid eligibility. This subsection states that:

"the amount from the trust deemed available to a grantor ... is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor."

Plaintiffs argue that, as with the federal and state laws governing transfers without fair consideration, in enacting the section on medicaid qualifying trusts, Congress only intended "to prevent *voluntary* transfers for the purpose of enabling the person making the transfer to qualify for Medicaid benefits. [Plaintiffs' brief in opposition to the defendant's motion for summary judgment, at 15 (citing legislative history of 42

U.S.C. § 1396a(k), H.R.Rep. No. 3101, 99th Cong., 2d Sess., pt. II, at 71 (1985))]. If Congress had intended to prohibit *involuntary* transfers made to protect the interest of an incompetent person, rather than his or her heirs, it certainly could have used clearer language to accomplish that goal.

Examination of 42 U.S.C. § 1396a(k) indicates that this section does not invalidate the trusts here at issue. The definition of the forbidden trusts requires that they be created by the individual applying for Medicaid benefits or that person's spouse. 42 U.S.C. § 1396a(k)(2). For the same reasons stated above in discussing transfers without fair consideration, I hold that the trusts were not created by the plaintiffs.

Similarly, the defendant, at the July 17, 1990 hearing, argued that *Hatcher v. Department of Health and Rehabilitative Services*, 545 So.2d 400 (Fla.App.1989) requires that I find that these trusts were created by the incompetent Medicaid claimants. *Hatcher* held that a trust created by an incompetent's guardian was a Medicaid qualifying trust despite the language in 42 U.S.C. § 1396a(k)(2). That court, however, relied on Florida law to reach the conclusion that the guardian was merely acting in place of the incompetent person. *Id.* at 402. The court stated:

"a legal guardian [under Florida guardianship law] has the primary duty to 'protect and preserve the *property [of the ward]* and to invest it prudently.... [and] [a]t the termination of the guardianship, to deliver the *assets of the ward* to the person lawfully entitled to them." *Id.* (quoting Fla.Stat. § 744.377(1)(a) & (c) (1987)).

Apparently, the term "property of the ward" refers to principal or capital assets, not mere income. Here there is no principal, but only a stream of income. Here Colorado law governs and I conclude that it does not consider the creation of a trust pursuant to Colo.Rev.Stat. § 15–14–409(1) to be a transfer by the incompetent party on whose behalf the trust was created. Additionally, the trust created by the incompetent's guardian in *Hatcher* is distinguishable from the instant trusts. The

*Hatcher* trust contained not just income, but principal exceeding $10,000.

Further, *Hatcher* is distinguishable because, as the court noted in the portion of the opinion quoted above, the guardian had a duty under Florida law to preserve the incompetent person's assets, not only for that person, but also for "the person lawfully entitled to them," presumably a remainderman. As noted above, under Colorado law and the facts of the instant case, the trustees managing the instant trusts are not preserving even trust income for any person other than the plaintiffs, and thus there is no corpus or principal to be handed over to an heir or remainderman. Any remnants from the income flow remaining in the trusts after the plaintiffs' deaths will be transferred to the Colorado Department of Social Services. Therefore, applying Colorado law, I conclude that *Hatcher* is distinguishable. In any event, as an opinion on Florida law by that state's intermediate appellate court, *Hatcher* would have little precedential value here.

Even had I concluded that *Hatcher* does apply to the instant trusts and that these trusts were medicaid qualifying trusts, the plaintiffs would not be rendered *ineligible* for Medicaid benefits by 42 U.S.C. § 1396a(k). If a trust falls within the definition of a medicaid qualifying trust, 42 U.S.C. § 1396a(k)(1) requires the "maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee" be considered available to the applicant when determining Medicaid eligibility. Under the terms of the trusts at issue, assuming full exercise of discretion by the trustees, they cannot distribute more than an amount $20.00 less than the Medicaid income eligibility level. Therefore, even if considered to be Medicaid qualifying trusts, (a conclusion I reject) these trusts would not render the plaintiffs ineligible for Medicaid.

The Congressional purpose for prohibiting Medicaid qualifying trusts is the same as that behind banning transfers without fair consideration. Congress sought to prevent wealthy individuals, otherwise ine-

ligible for Medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs. As discussed above, this clearly was not the motive for creating the instant trusts. For these reasons, the plaintiffs are entitled to summary judgment on this issue.

### III. Conclusion.

This opinion should not be perceived as an attempt to eliminate or alleviate the hardship imposed by the Utah Gap. That is a matter for the legislative branch of government. These plaintiffs constitute only a small fraction of Colorado's senior citizens who have become trapped in the Utah Gap. Most of the other victims are not incompetent. Ironically the very competence that disqualifies them from the remedy invoked in this case no doubt renders their predicament even more cruel, for they can fully understand the harsh technicality of their exclusion from benefits to which they feel equitably entitled.

Interestingly, a federal program available to states electing to participate provides funds to bridge the Utah Gap. As observed in *Department of Health, State of California v. Secretary of Health and Human Services*, 823 F.2d 323, 325 (9th Cir.1987):

A State also may elect to provide Medicaid benefits to the "medically needy." The medically needy satisfy the nonfinancial eligibility requirements for SSI or AFDC but their income exceeds the maximum levels permitted under those programs. *Atkins v. Rivera*, 106 S.Ct. at 2459. The medically needy qualify for benefits under Medicaid only after they incur expenses that reduce their income to the eligibility level. Thus, the medically needy must "spend down" their income to the level where their income matches the income of individuals eligible for SSI or AFDC. *Id.*

Colorado is one of only fifteen states that has not elected to participate in this program.

In their supplemental briefs, the parties have addressed the hardship provisions found in the sections of the Medicaid Act that deal with transfers for less than fair

market value, 42 U.S.C. § 1396p(c)(2)(D), and Medicaid qualifying trusts, 42 U.S.C. § 1396a(k)(4). Under these hardship provisions, a state may decide to waive applicability of the transfer and Medicaid qualifying trust rules where it determines that applying those rules would result in an "undue hardship." It has not been necessary in this case to reach the issue of whether these hardship provisions apply because I have determined that no prohibited transfers occurred through creation of these trusts.

Nevertheless, I note that apparently Colorado has not defined what constitutes "undue hardship." This too is clearly a question for the Colorado General Assembly and the Department of Social Services. Colorado could lighten the onerous burden imposed on many of its senior citizens by either participating in the "medically needy" program or by defining "undue hardship."

IT IS ORDERED that:

(1) the plaintiffs' motion for summary judgment is granted;

(2) the defendant's motion for summary judgment is denied;

(3) Judgment is entered in favor of all the plaintiffs and against the defendant;

(4) from the date each plaintiff was denied Medicaid benefits, the defendant is ordered to treat the trust assets as "available" to the plaintiffs, pursuant to 42 U.S.C. § 1396a(a)(17), only to the extent authorized by the terms of the trusts;

(5) the plaintiffs are entitled to recover their reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988; and

(6) the parties are ordered to meet within twenty (20) days in an attempt to agree upon an amount to be assessed as reasonable attorneys' fees to be paid to the plaintiffs, and to report back to this court within eleven (11) days after that meeting regarding its results. If the parties are unable to agree as to the amount of attorneys' fees, the plaintiffs shall file an appropriate motion addressing this issue and move for an expedited hearing.