WILLIAM HOESLY, APPELLANT, V. STATE OF NEBRASKA,
DEPARTMENT OF SOCIAL SERVICES, AND KERMIT R. MCMURRY,
DIRECTOR, NEBRASKA DEPARTMENT OF SOCIAL SERVICES,
APPELLEES.

498 N.W.2d 571

Filed April 23, 1993.    No. S-91-038.

Paul Schumacher for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

Acting through the defendant-appellee Nebraska Department of Social Services and its director, the defendant-appellee Kermit R. McMurry, the State disqualified the plaintiff-appellant, William Hoesly, from receiving further public assistance monies. Hoesly appealed to the district court, which implicitly found that Hoesly had renounced an after-acquired interest in certain personal property with the intention and for the purpose of continuing to qualify for such assistance, and thus affirmed the State's determination. Hoesly here asserts the district court erred in so ruling. We affirm.

Because the petition instituting the proceedings for review of the State's determination was filed in the district court after July 1, 1989, we review the district court's judgment for error appearing on the record. Neb. Rev. Stat. § 84-918(3) (Cum. Supp. 1992). See, also, *Department of Soc. Servs. v. Person*, 234 Neb. 865, 453 N.W.2d 390 (1990).

Hoesly was a recipient of assistance to the aged, blind, or disabled under the provisions of Neb. Rev. Stat. § 68-1001 et seq. (Reissue 1990) and of medical assistance under the provisions of Neb. Rev. Stat. § 68-1018 et seq. (Reissue 1990). On January 11, 1990, Hoesly's father died intestate, possessed of two certificates of deposit issued by a local bank. Although neither the actual certificates nor copies of them are in the record, a letter from the bank recites that one certificate, having a value of $21,091.35, stands in the name of Hoesly or his father with the right of survivorship, and the other, having a value of $11,000, stands in the name of Hoesly, his father, and Hoesly's two sisters with the right of survivorship.

At no time did Hoesly contribute funds to the certificates of deposit, nor did he receive any money or interest therefrom. Prior to his father's death, Hoesly's sole financial asset was a bank account with a balance of approximately $1,800.

On January 31, 1990, a local office of the department received a telephone call from Hoesly's niece, requesting a copy of the department's regulations, and specifically such

regulations as would allow Hoesly to renounce his share of his father's estate.

On March 14, 1990, the department sent Hoesly notice that his assistance was being terminated, effective March 31, because he now had an interest in resources in excess of the maximum limit permitted him, i.e., $2,000. See 469 Neb. Admin. Code, ch. 2, § 009.08 (1989). On April 12, Hoesly executed a renunciation of his rights to inherit or receive any property from his father's estate because he was "getting along fine and . . . didn't need the money."

The resolution of this case requires an interpretation and application of language found in several statutes.

Section 68-1002(3) provides, in pertinent part, that in order to qualify for assistance to the aged, blind, or disabled, an individual must not have "deprived himself directly or indirectly of any property whatsoever for the purpose of qualifying for" such assistance.

Nebraska's renunciation provisions are contained in Neb. Rev. Stat. § 30-2352 (Reissue 1989):

> (a)(1) A person . . . who is an heir . . . surviving joint owner or surviving joint tenant . . . may renounce in whole or in part, or with reference to specific parts, fractional shares, undivided portions or assets thereof, by filing a written instrument of renunciation within the time and at the place hereinafter provided.
>
> . . . .
>
> (c) Unless the transferor of the interest has otherwise indicated in the instrument creating the interest, the interest renounced, and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest renounced, passes as if the person renouncing had predeceased the decedent or had died prior to the date on which the transfer creating the interest in such person is made, as the case may be . . . . The person renouncing shall have no power to direct how the interest being renounced, shall pass . . . . In every case when the renunciation is within the time periods set forth . . . the renunciation relates back for all purposes to the date of death of the decedent or the date on which the

transfer creating the interest in such person is made, as the case may be.

Specifically with regard to the right of survivorship, Neb. Rev. Stat. § 30-2704(a) (Reissue 1989) reads:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. If there are two or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interests under section 30-2703 augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

We consider first whether Hoesly possessed a present interest in the certificates of deposit even prior to the death of his father.

A certificate of deposit in the names of multiple parties is a type of joint account. *Peterson v. Peterson*, 230 Neb. 479, 432 N.W.2d 231 (1988). Neb. Rev. Stat. § 30-2703(a) (Reissue 1989) states that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In *Peterson*, 230 Neb. at 488, 432 N.W.2d at 237, we construed § 30-2703(a) to mean:

One who knowledgeably creates a joint account with another arguably does so with the present intent to employ the account's survivorship characteristic in substitution for a testamentary device. Like testamentary devices, under § 30-2703 creation of a joint account, without more, accomplishes no present transfer of title to property. If, as in this case, all sums deposited into the joint account are deposited by one person, the joint account contemplates transfer of title to those funds to the other person or persons named on the account upon the death of the depositor. Of course, others named as joint holders of the account have the power to withdraw funds from the account before the death of the depositor, but under § 30-2703, they arguably do not have the right to do so.

Cf. 469 Neb. Admin. Code, ch. 2, § 009.03A2a (1988).

Because Hoesly's father was the sole depositor on both certificates of deposit, Hoesly did not possess an interest in the certificates until the occasion of his father's death.

Accordingly, we next concern ourselves with the interplay between §§ 68-1002 and 30-2352. As we embark on that task, we recall that statutory interpretation is a question of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Professional Firefighters of Omaha v. City of Omaha, ante* p. 166, 498 N.W.2d 325 (1993); *McDonald's Exec. Off. v. Nebraska Dept. of Revenue, ante* p. 82, 497 N.W.2d 377 (1993). In settling upon the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself. See, *Fecht v. The Bunnell Co., ante* p. 1, 497 N.W.2d 50 (1993); *Curry v. State ex rel. Stenberg,* 242 Neb. 695, 496 N.W.2d 512 (1993); *In re Interest of Powers,* 242 Neb. 19, 493 N.W.2d 166 (1992). Furthermore, in the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *Fecht, supra*; *Curry, supra*; *Hamilton v. Hamilton,* 242 Neb. 687, 496 N.W.2d 507 (1993).

We have previously construed § 68-1002 in *Meier v. State,* 227 Neb. 376, 417 N.W.2d 771 (1988). Therein, Meier sought and was denied access to the very assistance programs now before us. The department found that Meier was ineligible, claiming that she had dissipated personal funds and real estate with the intention and for the purpose of qualifying for public assistance. In upholding the district court's reversal of the department's determination, we, citing *Zybach v. State,* 226 Neb. 396, 411 N.W.2d 627 (1987), found that the evidence did not support the department's determination, emphasizing that

under the language of § 68-1002, depriving oneself of resources is not, in and of itself, a disqualifying act; the disqualification results from doing so with the intention and for the purpose of becoming eligible for public assistance.

Thus, we must determine whether the competent and relevant evidence supports the district court's finding that Hoesly's renunciation was with the intention and for the purpose of becoming eligible for public assistance. See *In re Applications T-61 and T-62*, 232 Neb. 316, 440 N.W.2d 466 (1989) (judgment unsupported by competent and relevant evidence example of error on record).

We have said that "purpose" with respect to § 68-1002 means an " 'intention, or aim, object, plan, project.' " *Zybach*, 226 Neb. at 402-03, 411 N.W.2d at 631, quoting Black's Law Dictionary 1112 (5th ed. 1979). "An intention or plan requires intelligence to be applied to a problem in seeking a desired result." *Zybach*, 226 Neb. at 403, 411 N.W.2d at 631.

The fact that Hoesly renounced his interest in the certificates of deposit shortly after he was notified of the termination of his eligibility for public assistance supports the district court's finding, as does Hoesly's statement that he was "getting along fine and . . . didn't need the money." Hoesly's statement overlooks that he is doing so only because he is living off resources produced by others.

The question therefore becomes which statute, the qualification statute, § 68-1002(3), or the renunciation statute, § 30-2352, controls Hoesly's destiny in this matter. Bearing in mind our rule that if there is a conflict the special provisions of a statute prevail over general provisions in the same or other statutes, *Cole v. Kilgore*, 241 Neb. 620, 489 N.W.2d 843 (1992), we rule that the qualification statute controls. That statute addresses a specific, narrow situation involving public assistance recipients attempting to purposely and intentionally dispossess themselves of property for the purpose of qualifying for assistance. The clear import of § 68-1002 is to prevent citizens from raiding the public purse when they possess sufficient resources to care for themselves. Although § 30-2352 expressly states that a renunciation relates back to the death of the decedent "for all purposes," § 68-1002 provides an

exception to this general rule.

Nonetheless, Hoesly asks that we adopt the reasoning of *Nielsen v. Cass County Social Services Bd.*, 395 N.W.2d 157 (N.D. 1986). Therein, the petitioner's mother, Evelyn Olson, was a recipient of medical assistance. Upon the death of Olson's mother, Olson was to inherit, by intestate succession, property valued at $23,000. However, Olson renounced her interest in her mother's estate. Determining Olson's interest prior to renunciation to be an inchoate property right and thus an available resource, the assistance authorities disqualified Olson. Moreover, the authorities determined that the renunciation constituted a transfer of property under N.D. Cent. Code § 50-24.1-02(1) (1981), which also disqualified Olson.

However, the Supreme Court of North Dakota held that Olson's renunciation of her interest in the inheritance did not disqualify her. N.D. Cent. Code § 30.1-10-01 (Supp. 1991) provided:

> 1. . . . [T]he representative of an incapacitated or protected person, who is an heir . . . may renounce, in whole or in part, the right of succession to any property or interest therein . . . by filing a written renunciation under this section.
>
> . . . .
>
> 3. Unless the decedent or donee of the power has provided otherwise, the property or interest renounced devolves as though the person renouncing predeceased the decedent . . . . A renunciation relates back for all purposes to the date of the death of the decedent or the donee of the power.

The *Nielsen* court decided that the foregoing provisions "unambiguously provide that the effect of a renunciation is to treat the interest as though it never passed to the renouncing party, because that party is deemed to have predeceased the decedent from whom the interest would have been received." *Nielsen*, 395 N.W.2d at 159. The *Nielsen* court also wrote that the language "for all purposes" rendered nugatory the state's position that Olson's interest in her mother's estate was an available resource and that her renunciation was a disqualifying

transfer.

The dissenting judge complained:

> It is widely known that as a result of soaring medical costs, medical assistance for the needy has become a substantial, if not onerous, part of both Federal and State expenditures. There can be little doubt that the purpose of Section 50-24.1-02(1) was to require those who have assets available to them to pay for medical assistance to pay those costs from those assets in order that those who have no assets available may be provided for from the public fisc. It is apparent to me that the legislative intent in enacting Section 50-24.1-02(1) was to prevent a person from purposely becoming impoverished in order to obtain medical assistance at the taxpayers' expense and to the benefit of the person's relatives and heirs. The result reached by the majority opinion does violence to that purpose and intent. The result can justifiably be considered by the taxpayers as a "rip-off."

*Nielsen*, 395 N.W.2d at 161.

Whatever may be the merits of the dissenting opinion, *Nielsen* is distinguishable from the case before us. The North Dakota statute affecting eligibility to receive assistance provided that no person who made an "assignment or transfer" of property for the purpose of establishing eligibility could receive assistance. The *Nielsen* court chose to read this statute narrowly. However, § 68-1002 paints in much broader strokes, declaring an individual ineligible if he or she has deprived himself or herself "directly or indirectly of any property whatsoever" for the purpose of qualifying for assistance.

Because Hoesly has failed to meet his burden of proving his entitlement to public assistance, see *Meier v. State*, 227 Neb. 376, 417 N.W.2d 771 (1988), his assignment of error is without merit.

Although not assigned as error, Hoesly nevertheless argues that if we affirm the district court's judgment, "the system of intestate succession set forth in §30-2303 as is based on genetic lineage is unconstitutional and a [sic] arbitrary denial of due process and equal protection depriving him of his entitlement to Aid and arbitrarily forcing upon him the unwanted

responsibility of property and its disposal." Brief for appellant at 10.

In the first place, the issue before us does not implicate the system of intestate succession. Hoesly did not acquire his interest in the certificates of deposit through succession; he acquired his interest through being named a coowner of the certificates with the right of survivorship.

Moreover, in his petition to the district court, Hoesly's only constitutional allegation was that the director's finding and order was "in violation of constitutional provisions." A mere blanket challenge of unconstitutionality is not specific enough to allow a trial court to make an informed ruling on the constitutional validity of a statute and robs the trial court of its role as a decisionmaker; it thus does not properly raise a constitutional issue. *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993). Since as a general matter a constitutional question will not be considered on appeal if not properly raised in the trial court, *id.*, even if intestate succession were to have been involved, Hoesly's effort to flesh out his constitutional claim in this court would have come too late.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.