BRIAN ESSEN AND LORI ESSEN, APPELLEES, V.
PAUL E. GILMORE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF ERMA B. GILMORE, DECEASED,
APPELLANT, AND GLEN A. GILMORE AND
SHARON M. GILMORE, HUSBAND AND WIFE, APPELLEES.

607 N.W. 2d 829

Filed March 24, 2000.    No. S-98-1225.

John L. Apker, of Dwyer, Smith, Grimm, Gardner, Lazer, Pohren & Rogers, for appellant.

Bradley E. Nick, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy & Nick, for appellees Brian Essen and Lori Essen.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

NATURE OF CASE

Brian Essen and Lori Essen brought a creditor's bill action against Paul Gilmore, personal representative of the estate of

Erma Gilmore (the Estate), and Glen A. Gilmore and Sharon M. Gilmore (the Gilmores). The Essens sought to have a judgment the Essens had obtained against the Gilmores in a prior suit satisfied out of Glen Gilmore's distributive share of the assets of the Estate. After the Essens filed their petition in the instant case, Glen Gilmore executed and filed a renunciation of his entire interest in the Estate.

The Essens and the Estate filed cross-motions for summary judgment. The Essens and the Estate stipulated to a set of facts which we conclude are the material facts. The district court for Dodge County determined that Glen Gilmore's renunciation was a fraudulent transfer. The district court overruled the Estate's motion for summary judgment and sustained the Essens' motion for summary judgment. The district court ordered the Estate to account to the Essens for the amount of the prior judgment and to pay to the clerk of the district court for Dodge County funds to be applied toward payment of the Essens' prior judgment plus interest and costs. For the reasons set forth below, we conclude that Glen Gilmore's renunciation was not a fraudulent transfer. We reverse the orders of the district court and remand the cause with directions to vacate the order granting summary judgment in favor of the Essens and to enter summary judgment in favor of the Estate.

## STATEMENT OF FACTS

On July 29, 1996, the Essens obtained a judgment against the Gilmores in the district court for Dodge County. The judgment was in the amount of $29,974.20 and costs in the amount of $92.38 with interest accruing from the judgment at the rate of 6.89 percent per annum.

Glen Gilmore's mother, Erma Gilmore, died on September 1, 1997. Her will was informally admitted to probate in the county court for Dodge County on September 26. The will named Paul Gilmore as personal representative and named Glen Gilmore as one of the beneficiaries.

On November 4, 1997, the Essens filed their petition in the instant case seeking satisfaction of their prior judgment out of Glen Gilmore's distributive share of the assets of the Estate. On January 2, 1998, prior to distribution, Glen Gilmore executed a

written renunciation by which he renounced all of his interest in the Estate, and the renunciation was filed with the county court for Dodge County and the Dodge County register of deeds. The parties stipulated that no valuable consideration was transferred to Glen or Sharon Gilmore in exchange for the execution of the renunciation.

The instant matter came on for hearing September 21, 1998, upon the cross-motions for summary judgment filed by the Essens and the Estate. The parties executed and had admitted into evidence a stipulation of facts evidencing that there were no issues of material fact.

On October 29, 1998, the district court entered its final order overruling the Estate's motion for summary judgment, sustaining the Essens' motion for summary judgment, and entering judgment in favor of the Essens in the amount of $34,726.63, which was the amount of the prior judgment against the Gilmores plus costs and interest as of the date of the order. In effect, the district court determined that Glen Gilmore's renunciation was a fraudulent transfer and would not be permitted to deny the Essens recovery on their creditor's bill. The Estate appealed.

## ASSIGNMENTS OF ERROR

The Estate asserts the district court erred (1) in determining that Glen Gilmore's renunciation of a distributive share of the Estate constituted a fraudulent transfer under the Uniform Fraudulent Transfer Act (UFTA) and (2) in ordering the Estate to pay the prior judgment to the Essens from Glen Gilmore's renounced distributive share of the Estate.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999). Although the denial of a motion for summary judgment, standing alone, is not a final, appealable

order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999). To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Ameritas Life Ins. v. Balka*, 257 Neb. 878, 601 N.W.2d 508 (1999).

## ANALYSIS

In the instant case, the parties have stipulated to the material facts. Therefore, summary judgment is proper as to the party who is entitled to judgment as a matter of law. See *Parnell, supra.* Because both the Estate and the Essens filed motions for summary judgment and the district court sustained the Essens' motion, this court has jurisdiction over both motions and may determine which party is entitled to judgment as a matter of law. See *Ferguson, supra.*

The Estate claims the district court erred when it concluded as a matter of law that Glen Gilmore's renunciation of his entire interest in the Estate was a fraudulent transfer and therefore determined that the Estate should pay the Essens' judgment from Glen Gilmore's distributive share. We agree with the Estate that the trial court erred as a matter of law. For the reasons set forth below, we conclude that a renunciation properly effected pursuant to Neb. Rev. Stat. § 30-2352 (Reissue 1995) and prior to distribution is not a "transfer" and therefore not a fraudulent transfer under the UFTA, Neb. Rev. Stat. §§ 36-701 through 36-712 (Reissue 1998). We observe that our analysis is consistent with the reasoning of the Nebraska Court of Appeals in *Trew v. Trew*, 5 Neb. App. 255, 558 N.W.2d 314 (1996), *reversed* 252 Neb. 555, 567 N.W.2d 284 (1997) (remanding with directions to dismiss for lack of jurisdiction).

A person named as a beneficiary under a will may, under § 30-2352, renounce his or her interest in whole or in part by fil-

ing a written instrument of renunciation. The instrument must contain certain elements listed in § 30-2352(a)(2) and must be received by the personal representative within the time limits set forth in § 30-2352(b). The instrument must also be filed in the county court for the county where the estate proceedings are pending, and if an interest in real estate is renounced, a copy of the instrument must be recorded in the office of the register of deeds in the county in which the real estate lies.

The parties in the instant case stipulated that Glen Gilmore "executed a written renunciation and disclaimer by which he renounced all of his interest in the Estate of Erma B. Gilmore, Deceased." They further stipulated that the renunciation "has been filed with the Dodge County Court and the Dodge County Register of Deeds." It is undisputed that Glen Gilmore's renunciation met the statutory requirements.

When a timely renunciation of an interest under a will is made, Nebraska law provides that "[u]nless the transferor of the interest has otherwise indicated in the instrument creating the interest, the interest renounced . . . passes as if the person renouncing had predeceased the decedent" and "[t]he person renouncing shall have no power to direct how the interest being renounced shall pass . . . ." § 30-2352(c). The renunciation voids any right in the renounced assets of the estate which may have vested in the beneficiary at the time of death of the decedent. The statute further contains a "relation back" provision which provides that a timely renunciation "relates back for all purposes to the date of death of the decedent." *Id.* Therefore, because Glen Gilmore filed a renunciation that met the statutory requirements, Glen Gilmore's renunciation relates back to September 1, 1997, the date of Erma Gilmore's death.

The Essens argue that notwithstanding Glen Gilmore's compliance with the renunciation provisions in § 30-2352, the renunciation constituted a fraudulent transfer under the UFTA. The Essens claimed at trial and argue on appeal that Glen Gilmore's renunciation could not defeat their creditor's bill which they assert became a lien upon Glen Gilmore's distributive share of the Estate upon their filing the petition in the instant case on November 4, 1997, which was prior to Glen Gilmore's execution of the renunciation on January 2, 1998. The

trial court agreed with the Essens' argument. The Essens and the trial court misperceive the law.

Under the UFTA, a creditor may reach assets transferred by a debtor if the transfer was fraudulent. See §§ 36-705, 36-706, and 36-708. It is fundamental that before there can be a "fraudulent transfer" under the UFTA, there must be a "transfer." As explained below, we conclude that a renunciation of an interest under a will prior to distribution is not a "transfer" for purposes of the UFTA and, therefore, not a fraudulent transfer.

The UFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." § 36-702(12). The UFTA further provides that "a transfer is not made until the debtor has acquired rights in the asset transferred." § 36-707(4). Thus, explicit in the act of transferring property in contravention of the UFTA is the prerequisite that the transferor has acquired rights to the asset transferred. It has been observed that under the UFTA, a person cannot transfer or otherwise dispose of something which he or she does not possess or does not yet rightfully possess. *Dyer v. Eckols*, 808 S.W.2d 531 (Tex. App. 1991). We must, therefore, examine for purposes of the UFTA whether a beneficiary under a will who renounces his or her interest under the will prior to distribution "has acquired rights in the asset," § 36-707(4), that he or she has renounced.

Nebraska law provides that a timely filed renunciation "relates back" to the date of death of the decedent. § 30-2352(c). The relation-back doctrine is based on the principle that a bequest or gift is merely an offer which can be either accepted or rejected. *Dyer, supra.* "The law forces no one to accept a gift." *Matter of Scrivani*, 116 Misc. 2d 204, 208, 455 N.Y.S.2d 505, 509 (1982). Thus, a renunciation of a bequest under a will is a refusal to accept the offer of the rights in the asset or to possess the asset offered.

We further note that under the probate statutes, a renunciation is irrevocable, and after renunciation, property passes as if the beneficiary predeceased the decedent. § 30-2352(c). As noted, renunciation relates back to the date of death of the decedent. *Id.*

The beneficiary who renounces his or her bequest has no control over the distribution of the renounced property and does not acquire rights in the renounced property. *Dyer, supra.* By virtue of relation back, a beneficiary who renounces his or her bequest did not, in effect, acquire the beneficial interest under the will on the date of death of the decedent. Because a beneficiary who has renounced his or her interest in property does not have and, pursuant to the relation-back doctrine, has not acquired rights in the asset renounced, he or she cannot "transfer" the property within the meaning of the UFTA. § 36-707(4). Because a renunciation is not a "transfer," it cannot be a fraudulent transfer under the UFTA, and creditors of the person making a renunciation cannot claim any rights to the renounced property under the UFTA.

An acknowledged consequence of the relation-back provisions commonly found in probate codes by which the renunciation relates back to the date of death of the decedent is that creditors of the person making the renunciation are barred from reaching the property renounced. E.g., *In re Bright*, 241 B.R. 664, 666 (B.A.P. 9th Cir. 1999) (citing *United States v. Irvine*, 511 U.S. 224, 114 S. Ct. 1473, 128 L. Ed. 2d 168 (1994), and holding that disclaimer of inheritance under will pursuant to Washington state probate law was not transfer of "interest of the debtor in property" within meaning of fraudulent transfer provisions of federal Bankruptcy Code). In this regard, we note that the majority of other state courts have held that a creditor cannot prevent a debtor from renouncing or disclaiming an inheritance. *Dyer, supra*; Annot., 39 A.L.R.4th 633 (1985).

A review of the jurisprudence of other states shows that it is the majority view that a renunciation under the applicable state probate code is not treated as a fraudulent transfer of assets under the UFTA, and creditors of the person making a renunciation cannot claim any rights to the renounced property in the absence of an express statutory provision to the contrary. E.g., *Bank v. Martin*, 666 N.E.2d 411 (Ind. App. 1996); *Matter of Estate of Opatz*, 554 N.W.2d 813 (N.D. 1996); *Dyer v. Eckols*, 808 S.W.2d 531 (Tex. App. 1991). See, also, *Abbott v. Willey*, 253 Va. 88, 479 S.E.2d 528 (1997) (concluding that disclaimer

of interest in life insurance proceeds did not constitute fraudulent conveyance).

We note that several states have enacted statutes which, in certain circumstances, prevent a debtor-beneficiary from renouncing or disclaiming his or her benefits under a will, thereby enhancing creditors' rights. For example, Minnesota has enacted a statute which bars a beneficiary's right to disclaim if the beneficiary is insolvent at the time of the event giving rise to the right to disclaim. Minn. Stat. Ann. § 525.532, subd. 6 (West Cum. Supp. 2000). See *In re Estate of Abesy*, 470 N.W.2d 713 (Minn. App. 1991). Alabama law provides that the right to disclaim is barred by an "encumbrance . . . of the property or interest." Ala. Code § 43-8-295 (1991). See *Pennington v. Bigham*, 512 So. 2d 1344 (Ala. 1987) (holding that by virtue of judgment creditor's lien on inherited real property, disclaimer by insolvent debtor was of no effect). See, also, Fla. Stat. Ann. § 732.801(6) (West Cum. Supp. 2000); Mass. Gen. Laws Ann. 191A § 8 (West 1990); N.J. Stat. Ann. § 3B:9-9 (West Cum. Supp. 1999); Wash. Rev. Code Ann. § 11.86.051 (West 1998). Nebraska has not enacted comparable statutory provisions for the benefit of creditors. We further note that in contrast to the foregoing statutes, California has passed legislation clarifying that a "disclaimer [i.e., a renunciation] is not a fraudulent transfer by the beneficiary." Cal. Prob. Code § 283 (West 1991).

In support of their appeal, the Essens refer the court to *Hoesly v. State*, 243 Neb. 304, 498 N.W.2d 571 (1993). *Hoesly* is distinguishable. In *Hoesly*, we affirmed the trial court's determination that the State had properly disqualified the plaintiff-appellant from receiving further public assistance monies because he had renounced his interest in his father's estate with the intention and for the purpose of continuing to qualify for such assistance. In *Hoesly*, this court was asked to apply the public assistance statute, Neb. Rev. Stat. § 68-1002(3) (Reissue 1990), which provided that an individual must not have "deprived himself directly or indirectly of any property whatsoever for the purpose of qualifying for" public assistance. In the present case, we are asked to interpret the provisions of the UFTA regarding "transfers," § 36-701 et seq., as contrasted with the public assistance statute at issue in *Hoesly*. We concluded in *Hoesly* that

although the probate code also contained provisions relating to the disavowal of property, the public assistance statute, § 68-1002(3), was the specific statute which controlled the *Hoesly* case over the general probate statute, § 30-2352(c). We, therefore, concluded that under the broad language contained in § 68-1002(3), by his renunciation of his interest in his father's estate, Hoesly had " 'deprived himself directly or indirectly of any property whatsoever,' " 243 Neb. at 311, 498 N.W.2d at 576, for the intended purpose of qualifying for public assistance and such act disqualified him from further assistance. The language of the UFTA, as discussed above, requires a different result, and *Hoesly* is inapposite to the case at bar.

## CONCLUSION

We hold that renunciation of an interest in a decedent's estate pursuant to § 30-2352 prior to distribution is not a transfer under § 36-701 et seq. and therefore is not a fraudulent transfer under the UFTA. The district court erred as a matter of law in determining otherwise. We therefore reverse the order and remand the cause to the district court with directions to vacate its order entering summary judgment in favor of the Essens and to enter summary judgment in favor of the Estate.

REVERSED AND REMANDED WITH DIRECTIONS.