In the Matter of CONTEMPORARY
INDUSTRIES CORPORATION,
Debtor.

Contemporary Industries Corporation,
Plaintiff,

v.

Terry G. Frost, et al., Defendants.

Bankruptcy No. 98–80382.
Adversary No. 99–8135.

United States Bankruptcy Court,
D. Nebraska.

July 8, 2003.

Clay M. Rogers, Michael L. Lazer,
Dwyer, Smith Law Offices, Harry D. Dix-
on, Jr., Dixon Attorneys International,
PLLC, Robert V. Ginn, Brashear & Ginn,
Steven C. Turner, T. Randall Wright,
Baird, Holm Law Firm, Omaha, NE, Kelly
A. McEnaney, Mintz, Levin, Cohn, Ferris,
Glovsky and Popeo, P.C., Richard E. Mik-

els, Boston, MA, Paul Bennett Bran, Washington, DC, for debtor/plaintiff.

Frank M. Schepers, Lamson, Dugan & Murray, Omaha, NE, for defendants.

Jerry L. Jensen, U.S. Trustee's Office, Omaha, NE, United States Trustee.

Michael C. Washburn, Erickson & Sederstrom, Omaha, NE, for Official Committee of Unsecured Creditors of Lockwood Corp.

M. Sue, trustee, pro se.

John Doe, pro se.

Jane Doe, pro se.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Before a United States Bankruptcy Judge for the District of Nebraska regarding Defendants' Motion for Summary Judgment, Filing No. 76, and Plaintiff's Preliminary Objection/Resistance to Defendant's Motion for Summary Judgment, Filing No. 96. Appearances: Paul Bennett Bran, Robert V. Ginn, and T. Randall Wright for the plaintiff; Frank M. Schepers and William Lamson, Jr., for the defendants. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (H), and (O).

### Procedural History

Early in this case, and prior to an answer being filed, the defendants filed a motion to dismiss. After hearing oral arguments on the motion, the undersigned treated the motion to dismiss as a motion for summary judgment and considered the confirmed plan, the order confirming the plan, and the disclosure statement supporting the confirmed plan as evidence.

Based upon consideration of those documents, an order was entered granting the motion to dismiss. The motion was granted on two legal theories, the first being that the plan itself precluded the complaint because the complaint was filed more than 180 days after the effective date of the plan. The second legal basis was that there were no material issues of fact and that judgment should be entered as a matter of law in favor of the defendants.

Shortly after that order was entered, the plaintiff filed a motion to alter or amend judgment, pointing out that the court had erroneously considered materials outside the complaint itself, that the parties had not agreed that the motion to dismiss should be treated as a motion for summary judgment, and requesting that the order be vacated. The order was vacated on the basis that matters outside the complaint had been considered.

After a procedural journey to the district court sitting in its appellate capacity and sitting in a capacity whereby the district court reviewed certain determinations made by this court concerning a refusal to permit a post-confirmation amendment to the confirmed plan, the matter was once again referred to the undersigned for resolution of dispositive matters, up to the time when the case would be ready for a pretrial conference, which is to be held by Magistrate Judge Piester.

Recently, upon a motion for partial summary judgment, the undersigned determined that one prong of the original decision, that the plan itself barred the bringing of this complaint more than 180 days after the effective date of the plan, was incorrect. The language of the confirmed plan was analyzed and it was determined that the bringing of this complaint was not barred by the language of the plan. That order is now before the

district court on a motion for leave to appeal.

There remains before the court a motion for summary judgment filed by the defendants shortly after they filed their answer, and a motion filed by the defendants to bar discovery until the court makes a determination with regard to the motion for summary judgment.

After filing the most recent order dealing with the 180–day bar date issue, the court invited the parties to comment upon the question of whether oral argument on the motion for summary judgment is necessary. As has been the situation with regard to many other matters in this adversary proceeding, counsel for the parties cannot agree. Counsel for the plaintiff, by letter to the court dated June 6, 2003, asserts that there is no need for oral argument or for determination on the merits of the motion for summary judgment until discovery is allowed. The letter once again reiterates the plaintiff's position that there are fact issues remaining, particularly dealing with whether a transfer of property "to or for the benefit of a creditor" occurred, and whether the company formed by investors to acquire the debtor's stock from the defendants, Contemporary Industries Holdings, Inc. ("CIH"), ever had "dominion and control" over the proceeds of the lenders' loans which were used to pay the shareholders. Counsel for the defendants, on the other hand, suggest that the issues raised in the motion for summary judgment require a decision as a matter of law on both of the matters raised by the plaintiff. Counsel for defendants suggest there is no real reason for oral argument, and definitely no reason to allow discovery because a final determination of the rights of the parties may be made by reviewing the complaint itself, the disclosure statement, the final order approving stipulation for use of cash collater-

al, the order confirming the debtor's amended assented-to plan and the amended assented-to plan.

Although this court did not rule on the defendants' motion requesting a bar to discovery pending disposition of the motion for summary judgment, Magistrate Judge Piester, during the time the case was pending before the district court, did stay discovery. Chief District Judge Kopf, in his Memorandum and Order once again referring the matter to the bankruptcy court, commented that Magistrate Judge Piester had entered such an order and that it was within the discretion of the bankruptcy judge to consider whether discovery related to factual matters is necessary or whether the motion for summary judgment can be ruled upon as a matter of law, as it was in the original order filed in response to the initial motion to dismiss.

Having considered the letter of June 6, 2003, from counsel for the plaintiff and the letter of June 10, 2003, from counsel for the defendants, and having now reviewed once again the plaintiff's second amended complaint, the disclosure statement, the final order approving stipulation for use of cash collateral, the order confirming the debtor's amended assented-to plan and the amended assented-to plan, I find, without the necessity of oral argument, that the motion for summary judgment should be denied and discovery should be authorized. There are several issues of material fact which preclude summary judgment and which will be discussed below.

### The Case

The second amended complaint, Filing No. 53 in the adversary proceeding, is brought by Contemporary Industries Corporation ("CIC"), the debtor and debtor-in-possession, and the Official Committee of Unsecured Creditors of CIC (the "Committee") against certain named defendants

(collectively referred to as "the defendants") and against any persons or entities that were direct or indirect transferees of the subject property transferred or its proceeds, identified as the "Doe Defendants." The complaint alleges that the defendants, former shareholders of CIC, received from CIC more than $26 million in exchange for their shares, and that the transfer of the money, which was property of the debtor, is avoidable.

The adversary proceeding is brought pursuant to Rule 7001(1) and (7) of the Federal Rules of Bankruptcy Procedure and Sections 105(a), 544(a) and (b), 550 and 551 of the Bankruptcy Code, and the Nebraska Uniform Fraudulent Transfer Act, Neb.Rev.Stat. §§ 36–701 through 36–712 (1996) (the "NUFTA"). The plaintiffs state that the adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H) and (O). Defendants admit that the adversary proceeding is a core proceeding and the court so finds.

### The Position of the Defendants

Defendants assert that it is clear from the materials submitted in their index of evidence that they received no transfer of CIC's property, or that even if they did, the transfer cannot be avoided as a matter of law because not all necessary parties are before the court and therefore the leveraged buyout ("LBO") transaction cannot be "collapsed" to allow the court to deal with the substance of the transaction.

### The Relief Requested

This complaint was filed to avoid a fraudulent transfer and to recover property or its value for the benefit of the estate pursuant to 11 U.S.C. § 544 and 11 U.S.C. § 550, using the Nebraska Uniform Fraudulent Transfer Act ("NUFTA"), Neb.Rev.Stat. §§ 36–701 to –712 (1996). Separate and distinct from the NUFTA claims, in Count No. VI, the complaint asserts that the cash transfers to the defendants constitute excessive and/or illegal distributions under applicable non-bankruptcy law. In addition, the complaint asserts at Count No. V that the transfer of approximately $26.5 million in cash to the defendants unjustly enriched each defendant to the extent of their receipt of such transfers or the proceeds thereof. Under both counts, the plaintiff requests damages in the aggregate amount of the actual transfers that each defendant received.

### Motion for Summary Judgment

The defendants filed a motion for summary judgment, Filing No. 76. The motion is supported by the index of evidence, Filing No. 78, and a brief. The substance of the motion, as argued in the brief, is that in order for the plaintiff to avoid a transfer under the Bankruptcy Code and under the Nebraska version of the UFTA, there must actually be a transfer of the property of the debtor to or for the benefit of the defendants. The defendants assert that the complaint does not allege any transfer of property of the debtor to the defendants. Specifically, the defendants claim the complaint does not allege that the cash the defendants received in consideration for conveyance of their shares to CIH originated from or was transferred by the debtor, CIC. The complaint, according to the movants, also does not seek to set aside any transfer of property of the debtor to any of the defendants. The movants claim that the complaint, when discussing transfers of property by the debtor, refers only to the act of the debtor in granting liens on debtor's assets, which liens represent security for loans from Bank One and Allied to CIH, the entity that purchased the shares from the defendants and thereupon became the owner of the debtor. It is the position of the defendants that the

complaint does not attempt to avoid the liens granted by the debtor. Defendants claim, as a matter of law, that the avoidance of the liens granted to the lenders is a condition precedent to any action against the defendants.

Additionally, the defendants assert that CIH, Bank One, Allied, and the investors are necessary and indispensable parties to whom and for whose benefit certain of the transfers alleged in the complaint were made.

### Summary Judgment Standard

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr.P. 7056); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Morgan v. Rabun,* 128 F.3d 694, 696 (8th Cir.1997), *cert. denied,* 523 U.S. 1124, 118 S.Ct. 1809, 140 L.Ed.2d 947 (1998); *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC,* 968 F.2d 695, 699 (8th Cir.1992).

In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record. *Widoe v. District No. 111 Otoe County Sch.,* 147 F.3d 726, 728 (8th Cir.1998); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir.1998).

The court's role is simply to determine whether the evidence in the case presents a sufficient dispute to place before the trier of fact.

> At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter. Rather, the court's function is to determine whether a dispute about a material fact is genuine.... If reasonable minds could differ as to the import of the evidence, summary judgment is inappropriate.

*Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376–77 (8th Cir.1996) (internal citations omitted). *See also Bell v. Conopco, Inc.,* 186 F.3d 1099, 1101 (8th Cir.1999) (on summary judgment, court's function is not to weigh evidence to determine truth of any factual issue); *Mathews v. Trilogy Communications, Inc.,* 143 F.3d 1160, 1163 (8th Cir.1998) ("When evaluating a motion for summary judgment, we must ... refrain from assessing credibility.").

To withstand a motion for summary judgment, the nonmoving party must submit "sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact." *Austin v. Minnesota Mining & Mfg. Co.,* 193 F.3d 992, 994 (8th Cir.1999) (quoting *Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 895 (8th Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993)). In this respect, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts; [it] must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.,* 158 F.3d 988, 990 (8th Cir. 1998). "[T]he mere existence of a scintilla of evidence in favor of the nonmoving party's position is insufficient to create a genuine issue of material fact." *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997) (internal quotation

marks omitted) (quoting *In re Temporo-mandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997)), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998).

### Conclusions of Law and Discussion

This action is brought pursuant to 11 U.S.C. §§ 544 and 550, NUFTA, and common-law claims of unjust enrichment and statutory claims of illegal distribution.

The Bankruptcy Code at 11 U.S.C. § 544(b)(1) provides that the debtor-in-possession, exercising the powers of a trustee, may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim. There were one or more creditors holding unsecured claims against CIC when the transactions occurred on December 21, 1995. The applicable non-bankruptcy law in this case is found in NUFTA, Neb.Rev.Stat. §§ 36–701 to –712.

■ The debtor-in-possession, exercising state law avoidance powers under 11 U.S.C. § 544, receives the benefit of a state law statute of limitations, which in the case of the NUFTA is four years from the date of the transfer. Neb.Rev.Stat. § 36–710. The debtor-in-possession receives this benefit if the action under Section 544 is commenced not later than two years after the entry of the order for relief. 11 U.S.C. § 546(a)(1)(A).

This adversary proceeding was filed within two years from the entry of the order for relief and within four years from the transactions complained of.

### Transfer of Property of Debtor

The complaint alleges one or more transfers of property of the debtor are avoidable under the NUFTA.

The undisputed fact, as stated in the complaint, is that $26.5 million of the $38 million obtained from Bank One, Allied, and the investors to finance the purchase of defendant-shareholders' stock through the LBO was used to pay shareholders.

■ To avoid a transfer under NUFTA, the transfer sought to be avoided must have been made by the debtor. Neb.Rev. Stat. §§ 36–705 and –706. A transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Neb.Rev.Stat. § 36–702(12). Under NUFTA, a creditor may reach assets transferred by the debtor if the transfer was fraudulent. Before there can be a fraudulent transfer under NUFTA, there must be a transfer of property in which the debtor has an interest. *Essen v. Gilmore*, 259 Neb. 55, 60, 607 N.W.2d 829, 834 (2000).

The second amended complaint alleges at paragraph 30 that CIC and its affiliates borrowed $9 million from Allied. The disclosure statement, at page 6–7, Article II(A)(3), makes the same assertion. Defendants state they are without sufficient knowledge to either affirm or deny the allegation and therefore deny it. (Answer, ¶ 30). At paragraph 33 of the second amended complaint, plaintiff asserts that the funds obtained from loans and investments, including the $9 million from Allied to CIC and affiliates, were used to purchase defendants' shares of stock in CIC. In defendants' answer at paragraph 33, they deny plaintiff's allegations concerning the use of $7.5 million of those funds, but admit receipt by defendants of approximately $26 million and admit approximately $2 million of the funds were paid as brokers' fees.

At paragraph 34, the second amended complaint alleges:

In order to finance the LBO, the defendants intended or understood that the Companies would grant blanket liens on all of their assets to Bank One and Allied as security for repayment of the more than $30 million of Senior Debt and Subordinated Debt that was incurred for the purpose of enabling the defendant-shareholders to sell their stock in CIC and its affiliates to the Investors through CIH as the acquisition vehicle.

Defendants deny the allegation. (Answer, ¶ 34).

 The assertions, admissions, and denials just referred to create issues of material fact. First, the loan from Allied to CIC and affiliates created a property interest in CIC for at least a portion of the $9 million. Whether some, or all, of CIC's interest in the loan proceeds from Allied was paid to defendants on the stock purchase is a question of material fact. Whether CIC or CIH ever had dominion and control over the loan funds is a question of material fact. Whether defendants intended or understood the use of CIC's assets, as alleged in paragraph 34 of the second amended complaint, is a question of material fact. Whether the transfer of CIC's interest in the Allied loan proceeds, if it occurred, was with actual intent to hinder, delay, or defraud any creditor of CIC or whether such transfer was made without CIC recovering a reasonably equivalent value in exchange, are issues of material fact. Whether debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer are issues of material fact. Whether defendants are "initial transferees" of the transfer of the Allied loan proceeds is a question of material fact. Whether defendants, by receiving any of the Allied loan proceeds, received an illegal distribution, is a question of material fact. Whether defendants were unjustly enriched by receipt of property of CIC is a question of material fact.

In conclusion, because there is a fact question concerning the basic issue in this case—whether property of the debtor, its share of loan proceeds from the Allied loan, was transferred to defendants—summary judgment cannot be granted. If there was such a transfer of property of the debtor, then the other issues of material fact listed above also preclude summary judgment.

The motion for summary judgment is denied. Separate order will be entered.