IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

NRS PROPERTIES V. LAKERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

NRS PROPERTIES, L.L.C., APPELLANT,

V.

MARK LAKERS AND JACKIE LAKERS, APPELLEES.

Filed July 21, 2020.    No. A-19-718.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed as modified.

Daniel W. Ryberg for appellant.

No appearance for appellees.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

NRS Properties, L.L.C., appeals the order of the district court for Douglas County, which declined to set aside a real estate purchase by Mark Lakers and Jackie Lakers on the ground that it was a fraudulent transfer. We modify the district court's order to award certain costs to NRS Properties. Finding no error in the court's decision on the merits of the case, however, we otherwise affirm.

## BACKGROUND

NRS Properties is a creditor of Mark, having obtained a judgment against him in December 2016 for over $290,000. NRS Properties commenced the instant action against Mark and Jackie under Nebraska's Uniform Fraudulent Transfer Act (UFTA), Neb. Rev. Stat. §§ 36-701 to 36-712 (Reissue 2016) (subsequently repealed and replaced by Uniform Voidable Transactions Act, 2019

- 1 -

Neb. Laws, L.B. 70). The amended complaint alleges that Mark and Jackie transferred assets, specifically $317,000, to purchase a residence and placed the residence in Jackie's name only in order to secrete assets from Mark's creditors. NRS Properties asked the district court to declare the conveyance of the real property to be a fraudulent transfer, execute on the real estate, and award it attorney fees and costs.

The evidence at trial revealed that Mark and Jackie have been married for over 30 years. Mark was involved in several different businesses and managed a limited partnership called Renewable Energy Fund I, L.P. (REFI). REFI contracted with AFA Management Company, LLC, for AFA Management to provide investment and financial management services for REFI. Mark was also the manager of AFA Management.

REFI made certain investments in a company called E Energy. In May 2014, Mark, as manager of AFA Management and on behalf of REFI, asked E Energy to repay the investment to REFI. E Energy complied, making a deposit of approximately $745,000 in a bank account owned by REFI. Thereafter, Mark, acting on behalf of AFA Management and REFI, made distributions of the $745,000. He explained at trial that he used the money to pay expenses of REFI, such as legal fees and advertising fees. He directed $240,000 to a company in Arizona. Mark also paid himself management fees by writing himself a check out of REFI's account for $15,000 and transferring $21,710 to his personal checking account.

In addition to these distributions, Mark directed that approximately $317,000 be transferred to a title company for the purchase of a residence in Bennington, Nebraska. The residence was titled in Jackie's name only, and prior to the closing of the purchase, Mark and Jackie made a downpayment of $5,000 paid out of their joint bank account. Mark and Jackie both testified at trial that REFI owed the $317,000 to Jackie as repayment of a loan. They offered a promissory note into evidence, which indicated that in 2008, Jackie loaned REFI $275,000 at a rate of 7-percent interest, and that Jackie could demand repayment at any time.

In a subsequent written order, the district court found that the promissory note was fraudulent. Nevertheless, the court determined that the transfer of funds from REFI's bank account to the title company was done by Mark in his capacity as manager of AFA Management and that neither Mark nor Jackie ever had any individual ownership or possessory rights in the funds. And because a fraudulent transfer can occur only where a debtor has acquired rights in the asset that was transferred, the district court held that the transfer of money for the purchase of the residence did not violate the UFTA. However, based on its finding that the promissory note was fraudulent and that Mark and Jackie committed perjury through their testimony and presentation of the note, the court concluded that their defense was frivolous and made in bad faith. The court therefore awarded attorney fees to NRS Properties in the amount of $26,560. NRS Properties filed a motion to alter or amend, which was denied. NRS Properties appeals.

ASSIGNMENTS OF ERROR

NRS Properties assigns that the district court erred in (1) determining that the transfer of money for the purposes of purchasing the residence was not fraudulent because Mark and Jackie did not have ownership or possessory rights to the money, (2) finding that the $5,000

downpayment from the joint account did not attach a legal interest in the $317,000 used to purchase the residence, and (3) failing to award costs to NRS Properties.

STANDARD OF REVIEW

An action under the UFTA is equitable in nature. See *Korth v. Luther*, 304 Neb. 450, 935 N.W.2d 220 (2019). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

ANALYSIS

*Fraudulent Transfer.*

NRS Properties argues that the district court erred in finding that no violation of the UFTA occurred because Mark and Jackie did not have ownership or possessory rights to the $317,000. We find no error in the court's decision.

Under the UFTA, a creditor may reach assets transferred by a debtor if the transfer was fraudulent. See §§ 36-705, 36-706, and 36-708. In an action to set aside an actually fraudulent transfer or obligation under § 36-705(a)(1) of the UFTA, it is the plaintiff's burden to prove by clear and convincing evidence that (1) the debtor made a transfer or incurred an obligation, (2) the plaintiff was a creditor of the debtor, and (3) the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor. *Korth v. Luther, supra*.

It is fundamental that before there can be a "fraudulent transfer" under the UFTA, there must be a "transfer." *Id.* The UFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." § 36-702(12). The UFTA further provides that "a transfer is not made until the debtor has acquired rights in the asset transferred." § 36-707(4). Thus, explicit in the act of transferring property in contravention of the UFTA is the prerequisite that the transferor has acquired rights to the asset transferred. *Essen v. Gilmore*, 259 Neb. 55, 607 N.W.2d 829 (2000). It has been observed that under the UFTA, a person cannot transfer or otherwise dispose of something which he or she does not possess or does not yet rightfully possess. *Essen v. Gilmore, supra*.

The district court in the present case found no fraudulent transfer occurred because neither Mark nor Jackie had any ownership rights to the $317,000 that was transferred to purchase the residence. On appeal, NRS Properties argues that because Mark had rights to some of the $745,000, it cannot be said that he had no rights to any of the $317,000. To the extent this argument was raised to the district court, we disagree.

Mark explained at trial the various distributions that he made on behalf of AFA Management for REFI out of the $745,000. Some of the money went to Mark for management fees, and those amounts were paid to Mark by check or transfer out of REFI's bank account. Other distributions were made to pay expenses owed by REFI to various creditors such as for legal fees

and advertising fees. Mark testified that he received his management fees, and "the rest" of the money was used for the operating expenses of REFI. There was no evidence presented that Mark had rights to any portion of the $745,000 other than the sums he received as management fees. Thus, the district court did not err in determining that Mark had already received the money to which he had acquired rights, and that he had no rights to the remaining $317,000 that was used to purchase the residence.

NRS Properties also asserts that "Mark Lakers IS AFA Management in 2014" and that "AFA and [Mark] are one." Brief for appellant at 8 and 14. NRS Properties claims that Mark, as AFA Management, had acquired contractual rights to some of the $745,000 by way of the agreement between AFA Management and REFI. AFA Management, a Nebraska limited liability company, is a separate legal entity, however, and Mark was its manager. A limited liability company is an entity distinct from its members. Neb. Rev. Stat. § 21-104 (Cum. Supp. 2018). See, also, *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015) (comparing limited liability companies to corporations). The individual members and managers of a limited liability company are generally not liable for a debt, obligation, or liability of the company. *Thomas & Thomas Court Reporters v. Switzer*, 283 Neb. 19, 810 N.W.2d 677 (2012). The company's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears. *Id*.

NRS Properties neither pled, offered evidence, nor argued at trial that the separate identity of AFA Management should be disregarded. And while NRS Properties now argues on appeal that AFA Management and Mark were one in the same, an appellate court is obliged to dispose of a case on the basis of the theory presented by the pleadings on which the case was tried. *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

Because AFA Management is a separate entity, Mark would not have acquired any individual rights to money owned by it; rather, as the district court determined, Mark's only connection to the $745,000 was the actions he took in his capacity as the manager of AFA Management and on behalf of REFI. As a result, the district court did not err in concluding that no fraudulent transfer under the UFTA had occurred because Mark never had ownership rights in the $317,000 he transferred.

*Downpayment.*

NRS Properties also assigns that the district court erred in finding that the $5,000 downpayment from Mark and Jackie's joint account did not attach a legal interest in the $317,000 used to purchase the residence. NRS Properties argues that when the $5,000 downpayment was made from the joint account, Mark and Jackie acquired a legitimate interest in the real property and that the relevant asset here is the residence, not the $317,000. We do not agree.

As explained above, under the UFTA, a creditor may reach assets transferred by a debtor if the transfer was fraudulent. See §§ 36-705, 36-706, and 36-708. The UFTA defines "asset" as property of a debtor, subject to certain exceptions not relevant here. § 36-702(2). It is NRS Properties' position that Mark used the $317,000 to purchase a residence titled in Jackie's name only in order to secrete the money from his creditors. Thus, the asset that was transferred was the money, not the residence that the money was used to purchase. Further, to the extent the $5,000

downpayment afforded Mark any ownership rights to the residence, the residence was never transferred by Mark, and the UFTA allows a creditor to reach assets that are transferred by the debtor. Accordingly, the residence is not an asset that could support a claim under the UFTA; thus, the district court did not err in its finding that the $5,000 downpayment did not grant Mark or Jackie ownership rights to the $317,000.

*Costs.*

NRS Properties asserts that in addition to an award of attorney fees, the district court should have also awarded it the costs of litigation. We agree that Neb. Rev. Stat. § 25-824(2) (Reissue 2016) requires assessment of costs when attorney fees are awarded, but due to evidentiary issues, we modify the order to include a limited award of costs as described below.

The district court awarded attorney fees to NRS Properties based on its finding that Mark and Jackie presented a frivolous and bad faith defense. Section 25-824(2) provides that the court shall award reasonable attorney fees and court costs against any attorney or party who has brought or defended a civil action that alleged a claim or defense which a court determines is frivolous or made in bad faith.

Here, the district court found the defense presented was frivolous and made in bad faith because it was based on perjured testimony and presentation of a fraudulent promissory note. This finding is not challenged on appeal. Because § 25-824 provides that the court shall award reasonable attorney fees and court costs when it determines that a defense is frivolous or made in bad faith, we conclude that the court's failure to award supported court costs to NRS Properties was erroneous.

NRS Properties offered into evidence an affidavit and billing statements, stating that it was requesting "attorney's fees" due to the frivolous nature of the defense. The affidavit of NRS Properties' counsel references only attorney fees and includes nothing regarding costs. Additionally, there is virtually no supporting documentation attached to the billing statements nor are they sufficiently detailed for the district court to award costs related to depositions, acquisition of various documents, and estimated expenses. See *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). The invoices also include notations for expenses that are not taxable court costs, see *City of Falls City v. Nebraska Mun. Power Pool*, 281 Neb. 230, 795 N.W.2d 256 (2011), or that related to the garnishment action. Accordingly, the majority of costs identified in the invoices were not recoverable for the reasons set forth above; however, we modify the district court's order to award NRS Properties court costs in the amount of $107.98 as the only allowable expense for which supporting documentation was provided.

## CONCLUSION

We conclude that the district court did not err in finding that Mark and Jackie had no ownership interest in the $317,000 used to purchase the residence; therefore, the court did not err in declining to set aside the real estate conveyance. NRS Properties was entitled to certain court costs, however. Consequently, the district court's order is modified to award court costs in the amount of $107.98 in addition to the attorney fees awarded by the district court.

AFFIRMED AS MODIFIED.